The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Richard Brian ROWERDINK, Defendant–Appellant.

No. 86SA209.

Supreme Court of Colorado, En Banc.

May 23, 1988.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for plaintiff-appellee.

T. Curtis Bobbitt, Colorado Springs, for defendant-appellant.

MULLARKEY, Justice.

The defendant, Richard Brian Rowerdink, appeals his conviction of unlawful possession of an incendiary device. The issues which he raises include the claimed unconstitutionality of the explosive or incendiary device statute, section 18–12–109, 8 C.R.S. (1984), the failure of the trial court to grant the defendant's motion to suppress and to compel disclosure of the identity of a government informant, the trial court's failure to declare a mistrial and to grant the defendant's motions for judgment of acquittal, the trial court's allowance of certain testimony by prosecution witnesses, and the trial court's failure to appoint a special prosecutor.[1] We uphold the constitutionality of the explosive or incendiary device statute and find no error in the proceedings below. Accordingly, we affirm.

I.

On June 20, 1984, the Colorado Springs police department received a telephone call from an anonymous informant regarding the theft of over 100 sticks of dynamite and the discovery of ten sticks of this stolen dynamite by two small children. The police department assigned # 1303 to the anonymous caller and confirmed that the incident involving the children had occurred. On June 21, 1984, caller # 1303 again telephoned the Colorado Springs police department and stated that two cases of the stolen dynamite had been purchased by a "very radical" resident of Colorado Springs who owned a business in Colorado Springs with offices in Denver and Los Angeles, California. The business was described as "protecting the public." The caller also identified the seller of the dynamite as Barry Lynn Curtis. While typing a report related to these phone calls, a police department secretary recognized, from previous information she had acquired, the business described by caller # 1303 as the defendant's business.

The police then began an investigation of the defendant which disclosed that the defendant previously had been investigated for operating a merchant patrol guard business without a license. At that time, the defendant described his business as a night-time operation providing security for various select industries and stated that his employees dressed in black coveralls, relied

---

1. Because the defendant challenges the constitutionality of the explosive or incendiary device statute, we have jurisdiction to decide this case pursuant to section 13–4–102(1)(b), 6A C.R.S. (1987).

primarily on stealth and cunning in performing their job tasks, and were thoroughly trained in hand-to-hand combat. The defendant had obtained several certificates from the National Rifle Association which indicated a degree of expertise in firearms. The defendant also had contacted the Colorado Springs police department offering to volunteer his services to the department in providing security for a sports festival. He stated that his organization was capable of infiltrating "terrorist and protestor" groups, that the organization was equipped with various types of weaponry and communication equipment, that it was quite capable of being a formidable force in difficult situations, and that it was not to be underestimated. The police also learned that the defendant had contacted a real estate sales agent seeking to rent or purchase land for the "tactical training" of his security officers.

On June 29, 1984, the police interviewed caller # 1303 in person. Caller # 1303 stated that Curtis was selling dynamite to fanatical groups in the Colorado Springs area. When caller # 1303 was asked about the defendant, he confirmed that the defendant was the party who had purchased the dynamite. Caller # 1303 stated that he had been in the defendant's residence and had observed various rifles and weapons in the residence, that the defendant had stated to him that the weapons were "booby-trapped" with military explosives, and that the defendant possessed an experimental nerve gas mask which was stolen from Fort Carson. He also said that he had received a telephone call from the defendant asking for Curtis, that Curtis then arranged to sell dynamite to the defendant, that following this phone conversation, he observed Curtis drive away in his pickup truck with dynamite loaded in the bed of the truck, and that Curtis returned at a later time without the dynamite. Caller # 1303 informed the police that he had observed a supply of Molotov cocktails in the defendant's garage.[2]

Officers of the police department then interviewed Curtis. On July 4, 1984, Curtis identified the defendant as the party to whom he had been selling dynamite. Curtis also directed the officers to a location where he had buried two cases of dynamite, which dynamite was recovered by the officers. The officers also verified that utility services were billed to the defendant for a residence at the address where caller # 1303 stated that he had observed weapons and Molotov cocktails.

Based on this information, which was provided to the issuing magistrate in the form of an application and affidavit for warrant, the police department obtained an arrest warrant for the defendant and a search warrant to search his residence and three automobiles for explosives, records of the sale, purchase or storage of explosives, illegal automatic weapons, an experimental nerve gas mask, smoke bombs, teargas grenades, and Molotov cocktails. On July 5, 1984, the police executed these warrants and recovered from the garage of the defendant several Grolsch beer bottles which are resealable bottles made of heavy glass. Each bottle contained a mixture of gasoline and oil and had a strip of denim attached to the neck of the bottle. A similar bottle was recovered from the defendant's car.

The defendant was convicted by a jury of two counts of possession of an incendiary device, and was sentenced to two years of probation. He now appeals this conviction.

## II.

The defendant argues that section 18-12-109, 8 C.R.S. (1984), is unconstitutionally overbroad and vague because it requires only possession of the prohibited article and knowledge of that possession, rather than wrongful intent. The defendant argues that these items may be possessed for innocent purposes, and that therefore the state legislature has no legitimate interest in prohibiting their possession. We find

---

**2.** A Molotov cocktail is "a crude hand grenade made of a bottle filled with a flammable liquid (as gasoline) and fitted with a wick or saturated rag taped to the bottom and ignited at the moment of hurling." *Webster's Third New International Dictionary* (1986).

that the defendant's argument is without merit.

Section 18–12–109(2) provides: "Any person who knowingly possesses or controls an explosive or incendiary device commits a class 4 felony." Section 18–12–109(1) defines "explosive or incendiary device" as including "[a]ny incendiary bomb or grenade, firebomb, or similar device, including any device, except kerosene lamps, which consists of or includes a breakable container including a flammable liquid or compound and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound and can be carried or thrown by one individual acting alone."

■ A statute is presumed to be constitutional. *E.g., People v. Moore*, 674 P.2d 354, 357 (Colo.1984); *People v. Garcia*, 197 Colo. 550, 552, 595 P.2d 228, 230 (1979). The party attacking the constitutionality of a statute has the burden to establish its unconstitutionality beyond a reasonable doubt. *E.g., Moore*, 674 P.2d at 357; *People v. Alexander*, 663 P.2d 1024, 1027 (Colo.1983). Where no fundamental right or suspect class is involved, a statute is constitutional if it is rationally related to a legitimate government interest. *People v. Pharr*, 696 P.2d 235, 237 (Colo.1984); *People v. Myrick*, 638 P.2d 34, 37 (Colo.1981). The state has a legitimate interest in controlling harmful conduct which is not constitutionally protected. *People v. Fitzgerald*, 194 Colo. 415, 419, 573 P.2d 100, 103 (1978).

■ An overbreadth challenge usually is applicable to legislative enactments which threaten the exercise of fundamental or express constitutional rights. *Garcia*, 197 Colo. at 552, 595 P.2d at 230; *see Moore*, 674 P.2d at 359; *Fitzgerald*, 194 Colo. at 419, 573 P.2d at 103. A statute also may be overbroad if, in addition to proscribing conduct which can be prohibited under the state's police power, it purports to prohibit conduct that is not within the police power. *People v. Sequin*, 199

Colo. 381, 384, 609 P.2d 622, 624 (1980); *see Garcia*, 197 Colo. at 553, 595 P.2d at 230. A legislative enactment is within the state's police power if it is reasonably related to the public health, welfare, or safety. *E.g., Pharr*, 696 P.2d 235, 237; *Garcia*, 197 Colo. at 553, 595 P.2d at 230.

■ The defendant does not allege that the statute at issue impinges upon a fundamental right or other constitutionally protected interest or that a suspect class is implicated. He does contend that the statute prohibits legitimate conduct that is not within the state's police power.[3] We have upheld other possession statutes against similar constitutional challenges. We have held, for instance, that it is within the state police power to prohibit the possession of a firearm while under the influence of drugs or alcohol because such action is reasonably related to the public health, welfare, and safety, *Garcia*, 197 Colo. at 553, 595 P.2d at 230, and that the legislature may classify the receipt of non-stolen property, when believed to be stolen by the receiver, as a felony because such action is rationally related to the legitimate governmental interest in seeking to interrupt the flow of stolen property, *Myrick*, 638 P.2d at 37. The purpose of the incendiary device statute is to prohibit the possession of items with intrinsic harmful potential. *People v. Lovato*, 630 P.2d 597, 600 (Colo.1981). The legislature has a legitimate interest in prohibiting the possession of items which it reasonably believes to be intrinsically harmful regardless of the intent of the possessor. We hold that section 18–12–109 is reasonably related to the legitimate governmental interest of preventing harm to the public.

■ The defendant also challenges the statute as unconstitutionally vague. A penal statute offends due process if it forbids or requires the doing of an act in terms so vague that persons of common intelligence necessarily must guess as to its meaning

---

**3.** At trial, the defendant claimed that the purported Molotov cocktails were useful in starting his barbecue and as backpacking stoves.

and differ as to its application. *E.g., Connally v. General Const. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); *Moore*, 674 P.2d at 356–57; *Sequin*, 199 Colo. at 385–86, 609 P.2d at 625. There is a limit, however, to the degree of precision that can be reasonably expected of a legislative enactment. *Garcia*, 197 Colo. at 553, 595 P.2d at 230.

■ The defendant contends that the statute does not provide reasonable notice to a person of ordinary intelligence of those acts which are prohibited by the statute. The statute clearly states, however, that knowing possession or control of the restricted items is prohibited. § 18–12–109(2). We have held that "possession" is not an imprecise term and that it should be given its generally accepted meaning, which is actual or physical control. *Garcia*, 197 Colo. at 554, 595 P.2d at 231. The statute also clearly provides a description of the prohibited items which a reasonable person would read to include the items seized from the defendant's residence. § 18–12–109(1). In fact, the defendant testified that, under questioning by the police, he characterized the seized bottles as Molotov cocktails. He also conceded on cross-examination that the seized bottles met all of the elements of the incendiary device definition in section 18–12–109(1). We hold that the statute provides reasonable notice of that conduct which it prohibits.

## III.

At trial, the defendant moved to suppress all evidence seized from the residence of the defendant and all statements, testimony, and other evidence that were the fruits of that search. This motion was denied by the trial court. The defendant now argues that the information forming the basis of the warrants was not reliable and that, absent disclosure of the identity and criminal record of the anonymous informant, any determination of the adequacy of the affidavit was inadequate.

The fourth amendment to the United States Constitution and Article II, Section 7 of the Colorado Constitution provide that no warrant shall issue without probable cause. In analyzing whether probable cause exists to support a search warrant, the United States Supreme Court has adopted a totality of the circumstances test for purposes of the federal constitution. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, *reh'g denied*, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983). This court has adopted the same test for purposes of the Colorado Constitution. *People v. Pannebaker*, 714 P.2d 904, 907 (1986). The totality of the circumstances test continues to rely upon the elements of a probable cause determination—the informant's veracity or reliability and his basis of knowledge—established by the Supreme Court in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *Gates*, 462 U.S. at 230, 233, 103 S.Ct. at 2329, (the *Aguilar–Spinelli* elements are "closely intertwined issues that may usefully illuminate" the probable cause question and are "relevant considerations in the totality-of-the-circumstances analysis"); *People v. Grady*, 755 P.2d 1211, 1214–15 (Colo.1988); *People v. Lubben*, 739 P.2d 833, 835 (Colo.1987). "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332.

■ The informant personally observed weapons and Molotov cocktails in the defendant's residence and what appeared to be a delivery of dynamite from Curtis to the defendant. Information provided as a result of the personal observations of an informant establishes an adequate basis of knowledge for that informa-

tion. *People v. Stoppel*, 637 P.2d 384, 387–88 (Colo.1981). The reliability of this information was corroborated by further police investigation which resulted in statements by Curtis incriminating the defendant and information about the defendant which confirmed that the defendant fit the description, provided by the informant, of the buyer of dynamite. The information provided by Curtis was itself reliable because it implicated Curtis in criminal activity. Declarations against the penal interests of informants establish informant credibility in an affidavit for a search warrant. *Stoppel*, 637 P.2d at 388. The totality of the circumstances test places particular importance on the value of corroboration of the details of an informant's tip by independent police work. *Gates*, 462 U.S. at 241, 103 S.Ct. at 2333–34; *Pannebaker*, 714 P.2d at 907. We hold that the search warrant at issue established probable cause to search the defendant's residence.

■ The defendant's argument that disclosure of the name and criminal record of the confidential informant was necessary to ascertain the sufficiency of the affidavit supporting the search warrant is similarly without merit. In ruling on a motion for disclosure of the identity of a confidential informant, a trial court must weigh the public interest in protecting the flow of information against the defendant's right to prepare a defense. *Roviaro v. United States*, 353 U.S. 53, 62, 77 S.Ct. 623, 628–29, 1 L.Ed.2d 639 (1957); *People v. Garcia*, 752 P.2d 570, 578 (Colo.1988). A defendant requesting disclosure of a confidential informant's identity has a burden to make an initial showing that the informant will provide information essential to the merits of his suppression ruling. *E.g., Garcia*, at 578; *People v. Bueno*, 646 P.2d 931, 935–36 (Colo.1982). The defendant must establish a reasonable basis in fact to believe one of two things: either that the informant does not exist, or that the informant did not give the police the information on which they purportedly relied. *Garcia*, at 578–79; *see Bueno*, 646 P.2d at 936.

■ The defendant has made no showing of a need for disclosure in this case. His argument that such disclosure was necessary to make a probable cause determination is not persuasive. Given the corroboration of the information provided by caller # 1303, which included the discovery of new information independent from that provided by the informant, the trial court had sufficient information in front of it to make a probable cause determination regardless of the identity or criminal record of the informant. Because the defendant has not demonstrated that nondisclosure prevented him from preparing a meaningful defense, we hold that the trial court did not err in refusing disclosure. *See Garcia*, at 578; *People v. Arnold*, 186 Colo. 372, 378, 527 P.2d 806, 809 (1974).

### IV.

The defendant argues that the trial court erred by failing to declare a mistrial after granting, in part, his motion for judgment of acquittal at the close of the People's case. He also argues that the trial court erred in failing to grant in full his motions for judgment of acquittal. We conclude that these arguments are without merit.

In addition to the charges on which the defendant was convicted, he was also charged, in a separate action, with a similar offense alleged to have occurred in the period from July 1983 through December 1983. Before trial, the defendant moved to join the charges pursuant to Crim.P. 8, and the trial court granted this motion. At the close of the People's case, the trial court granted the defendant's motion for acquittal as to the charge related to the July through December 1983 period. The defendant did not at that time move for a mistrial. The defendant now claims that he was prejudiced by the introduction of evidence related to that charge and that the trial court should have ordered a mistrial *sua sponte*.

■ The defendant, by requesting joinder of the charges, created the opportunity for the alleged error and prejudice of which

he now complains. In ruling on a trial court's failure to order a severance *sua sponte* under similar circumstances, we have stated that it was likely that defense counsel had made a strategic decision not to seek severance, and we held that, when defense counsel's strategy backfires, the resultant error cannot be grounds for reversal on appeal. *People v. Peterson,* 656 P.2d 1301, 1304 (Colo.1983); *see People v. Mann,* 646 P.2d 352, 358 (Colo.1982); *People v. Shackleford,* 182 Colo. 48, 50, 511 P.2d 19, 20 (1973). There is no doubt that the defendant's trial counsel made a strategic decision to join the charges; having done so, the introduction of evidence related to the joined charges cannot now serve as a basis for reversal. Further, the defendant's failure to move for a mistrial during trial constitutes a waiver of this issue. *See Peterson,* 656 P.2d at 1304 (failure to make a motion for severance); *People v. Aalbu,* 696 P.2d 796, 806 (Colo.1985) (failure to renew a severance motion during trial).

The defendant argues that the evidence presented at trial was insufficient to survive his motions for judgment of acquittal. He first argues that, because the only evidence presented at trial was evidence of an "innocent act," his motions should have been granted. We reject this argument because, as explained in section II *infra,* the legislature may legitimately proscribe the conduct supporting the defendant's conviction.

■ The defendant further argues that, even if the statute may legitimately proscribe possession of the items at issue, the evidence presented at trial failed to establish his commission of the offense. He specifically contends that the evidence failed to show that the strips of denim attached to the bottles were "wicks" or that the bottles were breakable.

The issue before a trial judge in passing upon a motion for judgment of acquittal is whether the relevant evidence, when viewed as a whole in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that a defendant is guilty of the charge beyond a reasonable doubt. *People v. Ramos,* 708 P.2d 1347, 1349 (Colo.1985); *People v. Bennett,* 183 Colo. 125, 130, 515 P.2d 466, 469 (1973); *People v. Gennings,* 196 Colo. 208, 210, 583 P.2d 908, 909 (1978). The exhibits introduced at trial, which included one of the seized bottles and pictures of all of the seized evidence, were sufficient to present this factual question to the jury. In addition, ample testimony was presented by the arresting officers, by the head of the Colorado Springs Police Department Explosive Unit who investigated the case, and by a defense witness who was a friend of the defendant that the strips of denim attached to the bottles were wicks, that the bottles were breakable, and that the bottles could be used as Molotov cocktails. The defendant himself testified that the denim could be used as wicks and that the bottles were breakable. An investigator for the Colorado Springs Fire Department testified that he had investigated an incident in which a fire had been started with three Molotov cocktails made out of Grolsch beer bottles, two of which broke and ignited flammable liquid contained in the bottles. Prior to the introduction of the fire investigator's testimony, the court advised the jury that the People had stipulated that the defendant was not involved in this incident and that this evidence was offered only to demonstrate that a Grolsch beer bottle was breakable.

■ The defendant argues that some of this evidence was improperly admitted. He contends that testimony characterizing the denim strips as wicks "attached" to the bottles was inadmissible because this testimony concerned an ultimate issue of fact to be decided by the jury. However, C.R.E. 704 states that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." The defendant further argues that this testimony was not helpful to the

jury because the witness' conclusion could be inferred by the jury by observing the exhibits. The decision to allow a witness to express an opinion based on physical facts he has observed is a question for the trial court, not subject to reversal unless clearly erroneous. *E.g., Farley v. People,* 746 P.2d 956, 958 (Colo.1987); *People v. Gallegos,* 644 P.2d 920, 927 (Colo.1982); *Wise v. Hillman,* 625 P.2d 364, 367 (Colo.1981). The testimony in question was based upon the observations of physical objects by the witnesses. We cannot say the decision to admit this testimony was clearly erroneous.

■ The defendant also argues that the testimony of the fire department investigator was improper. This testimony was offered by the prosecution in rebuttal to demonstrate that Grolsch beer bottles were breakable and could be used to construct incendiary devices. The theory of the defendant at trial, as in his arguments to this court, appeared to be two-fold: that the defendant was not guilty because of his allegedly innocent purpose, and that the seized bottles were not incendiary devices. Defense counsel attempted to establish the latter theory through its cross-examination of the prosecution's witnesses. At one point, apparently angered by the assertion of a prosecution witness that People's Exhibit 1, one of the seized bottles, could function as a Molotov cocktail, one of the defense counsel threw the bottle to the courtroom floor. The bottle did not break. The People argue that the testimony of the fire department investigator was properly admitted to rebut the defense theory that the seized bottles were not incendiary devices and to rebut, in particular, this improper exhibition by defense counsel.[4]

The admission of rebuttal testimony is within the discretion of the trial court. *Moore v. People,* 171 Colo. 338, 467 P.2d 50, 53 (1970). A party may introduce in rebuttal any competent evidence which explains, refutes, counteracts, or disproves the evidence put on by the other party,

even if the rebuttal evidence also tends to support the party's case-in-chief. *People v. Lewis,* 180 Colo. 423, 428, 506 P.2d 125, 127 (1973); *People v. Enriquez,* 42 Colo.App. 309, 310, 597 P.2d 1048, 1049 (1979); *see People v. Brockman,* 699 P.2d 1339, 1342 (Colo.1985) (surrebuttal).

We hold that the admission of this testimony was proper. Any potentially improper prejudice to the defendant was dispelled by the People's stipulation that the defendant was not involved in the fire-bombing incident and by the trial court's limiting instruction that the testimony was offered only to demonstrate that Grolsch beer bottles can be broken. Thus, the defendant's argument that the testimony should have been excluded under C.R.E. 403 because the danger of unfair prejudice created by introduction of this testimony outweighed its probative value is without merit. We also hold that this testimony, in addition to the other evidence presented at trial, was sufficient to defeat the defendant's motions for judgment of acquittal.

### V.

■ The defendant argues that the trial court erred in failing to appoint a special prosecutor. At the hearing on the defendant's motion to appoint a special prosecutor, the defendant called John Holiday, an investigator employed by the district attorney's office prosecuting this case. Holiday testified that, as an acquaintance of the defendant, he had discussed the present case with the defendant prior to his employment with the district attorney. Holiday further testified that he had told members of the district attorney's office that he had discussed the case with the defendant, but that he did not disclose any specifics regarding those conversations. Holiday was not involved in the prosecution of Rowerdink.

The defendant relies on *People v. Stevens,* 642 P.2d 39 (Colo.App.1982), which

---

4. The defendant's present counsel was not involved in this incident. The defense lawyer

who was involved was held in contempt by the trial court.

held that where an attorney who had represented the defendant by filing motions and appearing at the preliminary hearing was later employed by the district attorney's office prosecuting the same case, that office should be disqualified and a special prosecutor appointed regardless of whether the defendant could demonstrate that he had been prejudiced by the attorney's actions. *Stevens* is easily distinguishable, however, because the opinion turned on the attorney-client relationship established between the defendant and the attorney. Here, we have no attorney-client relationship, and the defendant never retained the investigator.[5] We decline to extend *Stevens* to the facts of this case, and we hold that the trial court did not err in denying the defendant's motion for appointment of a special prosecutor.

### VI.

The defendant finally contends that his conviction should be reversed on the basis of cumulative error. Because the defendant has failed to demonstrate any error in the trial proceedings, we reject his assertion of cumulative error. *See People v. Marin*, 686 P.2d 1351, 1357 (Colo.App. 1983).

The judgment of the trial court is affirmed.

---

5. The defendant claims that Holiday was in a "position of trust" in regard to the defendant because these discussions had occurred in contemplation of the defendant's retention of Holiday, but this assertion is contradicted by Holiday's testimony. The defendant offered no evidence to support this claim at the motion hearing.