The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
April 2, 2020

## 2020COA60

**No. 19CA0349, *Credit Service Co. v. Skivington* — Civil Procedure — Defenses and Objections — Failure to State a Claim Upon Which Relief Can be Granted**

A division of the court of appeals considers whether a party may appeal a denial of a motion to dismiss for failure to state a claim under C.R.C.P. 12(b)(5) once judgment has been entered following a trial.  The division concludes that after a trial on the merits, an order denying a motion to dismiss for failure to state a claim is not appealable.

COLORADO COURT OF APPEALS     **2020COA60**

Court of Appeals No. 19CA0349
El Paso County District Court No. 18CV31955
Honorable David A. Gilbert, Judge

Credit Service Company, Inc.,

Plaintiff-Appellee,

v.

Paul Skivington,

Defendant-Appellant.

JUDGMENT AND ORDER AFFIRMED

Division V
Opinion by JUDGE J. JONES
Harris and Brown, JJ., concur

Announced April 2, 2020

No Appearance for Plaintiff-Appellee

Paul Skivington, Pro Se

¶ 1    Defendant, Paul Skivington, appeals the trial court's judgment and its order denying his motion for new trial.  We affirm.  Among the issues we address is whether a party may appeal a denial of a motion to dismiss for failure to state a claim under C.R.C.P. 12(b)(5) once judgment has been entered following a trial.  We hold that a party may not.

## I.    Background

¶ 2    In early 2017, Mr. Skivington suffered a stroke.  He went to a University of Colorado Health (UC Health) hospital for medical treatment.  While there he signed an agreement, titled "Treatment Agreement and Conditions of Service," providing that UC Health would treat him in exchange for his agreement to pay for that treatment.  After treating Mr. Skivington, UC Health billed him $30,536.10 for its services.  Mr. Skivington didn't pay.  UC Health then assigned his account to plaintiff, Credit Service Company, Inc. (CSC), a collection agency, to collect the debt.

¶ 3    CSC sued Mr. Skivington to recover the outstanding balance on his UC Health account.  Mr. Skivington filed two C.R.C.P. 12(b)(5) motions to dismiss the claims: in the first motion, he asserted that CSC's complaint was invalid because CSC hadn't filed

1

a response to Mr. Skivington's answer to the complaint; and in the second motion, he argued, as now relevant, that (1) the evidence showed that UC Health treated not him, but a person named Paul Doe; and (2) CSC's complaint failed to state a plausible claim for relief. The trial court denied both motions.

¶ 4 The case went to trial before the court on January 24, 2019, almost two years after the event. At the end of trial, the court ruled in CSC's favor, finding that it had presented sufficient evidence linking Mr. Skivington to the debt owed to UC Health.

¶ 5 Two weeks later, Mr. Skivington filed a C.R.C.P. 59 motion for a new trial, which the trial court denied.

## II. Discussion

¶ 6 Mr. Skivington contends on appeal that the trial court erred by (1) denying his Rule 12(b)(5) motion to dismiss because CSC's complaint failed to state a plausible claim; (2) admitting CSC's Exhibits 2 and 4; and (3) denying his Rule 59 motion for a new trial. We address and reject each of these contentions in turn.

### A. Denial of Motion to Dismiss

¶ 7 Mr. Skivington first contends that the trial court erred by denying his Rule 12(b)(5) motion to dismiss for failure to state a

claim.  But we conclude that the court's denial of that motion isn't reviewable.[1]

¶ 8     No published Colorado appellate court decision addresses specifically whether an order denying a motion to dismiss for failure to state a claim is reviewable after a trial on the merits.  But the Colorado Supreme Court has addressed a similar issue — whether the denial of a motion for summary judgment is appealable after a trial.  And it has held that such a denial isn't reviewable, whether based on a question of law or the existence of disputed issues of material fact.  *Feiger, Collison & Killmer v. Jones*, 926 P.2d 1244, 1250 (Colo. 1996); *Manuel v. Fort Collins Newspapers, Inc.*, 631 P.2d 1114 (Colo. 1981).

¶ 9     As it has explained,

> [t]his holding comports with the purpose of a summary judgment motion — to expeditiously dispose of cases that can be decided without the expense and delay associated with trial at an early stage in the litigation.  This objective is no longer achievable after a full trial on the merits. . . . In particular, foreclosing appellate review of a trial court's determination that a

---

[1] And, in any event, we conclude that CSC's complaint contains sufficient factual allegations that, if accepted as true, state a claim for relief that is plausible on its face.  *See Warne v. Hall*, 2016 CO 50, ¶ 1.

> trial on the merits *is* warranted underscores the principle that a summary judgment motion appropriately is granted only in the clearest of circumstances and reinforces the understanding that the trial court is best-situated to render that determination in the first instance.

*Feiger, Collison & Killmer*, 926 P.2d at 1250 (citations omitted).

¶ 10 Perhaps more importantly, appellate review of such an order "could lead to the absurd result" of depriving a prevailing party — "after a full trial and a more complete presentation of the evidence" — of its favorable verdict for its failure to prove its case earlier in the litigation. *Manuel*, 631 P.2d at 1117 (quoting *Navajo Freight Lines, Inc. v. Liberty Mut. Ins. Co.*, 471 P.2d 309, 313 (Ariz. Ct. App. 1970)). As a matter of fairness, therefore, "a final judgment should be tested upon the record as it exists at the time it is rendered, rather than at the time the motion for summary judgment is denied since further evidence may be supplied at trial." *Rick's Pro Dive 'N Ski Shop, Inc. v. Jennings-Lemon*, 803 S.W.2d 934, 935 (Ark. 1991).

¶ 11 Courts in other jurisdictions have held that the rationale for this rule "applies with equal force" to motions to dismiss for failure to state a claim. *See, e.g.*, *Nolfi v. Ohio Ky. Oil Corp.*, 675 F.3d 538, 545 (6th Cir. 2012). We agree. After all, the purpose of a motion to

dismiss for failure to state a claim "is to test the formal sufficiency of the complaint" so as "to permit early dismissal of meritless claims," *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 911, 915 (Colo. 1996), and that purpose is no longer achievable if the plaintiff prevails after a full trial on the merits, *Bennett v. Pippin*, 74 F.3d 578, 585 (5th Cir. 1996). As well, "the sufficiency of the allegations in the complaint [becomes] irrelevant" following the trial; the plaintiff "has proved, not merely alleged, facts sufficient to support relief." *Id.* And relatedly,

> [t]he policy behind the Rules of Civil Procedure is to resolve controversies on the merits, not on technicalities of pleading. . . . This is especially true in light of the liberal pleading now allowed, the relatively free availability of amendments, and the affirmative duty of the opponent to object to evidence as outside the pleadings.

*Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 340 S.E.2d 755, 758 (N.C. Ct. App. 1986) (citation omitted). Indeed, "[t]he arguments for not considering an appeal from a denial of a . . . dismissal [for failure to state a claim] are stronger than those for not considering a refusal to dismiss under Rule 56, given the ease with which a plaintiff may

5

amend a complaint after judgment in order to conform to the evidence." *Bennett*, 74 F.3d at 585.

¶ 12 We therefore hold that a denial of a motion to dismiss for failure to state a claim isn't reviewable on appeal following a trial on the merits. *See also ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1172 (10th Cir. 2011) ("[A]s a general rule, a defendant may not, after a plaintiff has prevailed at trial, appeal from the pretrial denial of a . . . motion to dismiss [for failure to state a claim], but must instead challenge the legal sufficiency of the plaintiff's claim through a motion for judgment as a matter of law."); *Simon v. Jackson*, 855 So. 2d 1026, 1030 (Ala. 2003) (the denial of a motion to dismiss for failure to state a claim is moot after a trial on the merits); *Denali Real Estate, LLC v. Denali Custom Builders, Inc.*, 926 N.W.2d 610, 621 (Neb. 2019) (same); *Raider Ranch, LP v. Lugano, Ltd.*, 579 S.W.3d 131, 133 (Tex. App. 2019) (the denial of motion to dismiss for failure to state a claim isn't reviewable following a trial on the merits); *cf. W. Fire Truck, Inc. v. Emergency One, Inc.*, 134 P.3d 570, 577 (Colo. App. 2006) (an order denying a motion for judgment on the pleadings isn't reviewable on appeal). It

follows that we won't consider Mr. Skivington's challenge to the trial court's denial of his Rule 12(b)(5) motion.

### B. Admission of Exhibits 2 and 4

¶ 13 During its case-in-chief, CSC introduced a document marked as Exhibit 2 to prove that UC Health correctly billed Mr. Skivington, and not some other patient, for the medical services it rendered in 2017. Exhibit 2 is an internal UC Health document showing inputs of Mr. Skivington's personally identifiable information, including his name, address, date of birth, and social security number. It shows that the hospital input information on three occasions: the first includes Mr. Skivington's first name (Paul); the second includes his address and phone number; and the third includes his full name (Paul Skivington), date of birth, and social security number.

Mr. Skivington objected to the admission of the exhibit because CSC had failed to disclose it to him before trial. CSC's counsel acknowledged his failure to disclose Exhibit 2 previously but explained that CSC only sought to introduce the exhibit in "anticipation of Mr. Skivington's defense of: I don't know why I'm here." The court considered Exhibit 2 as "[p]rophylactic rebuttal" evidence and admitted it over Mr. Skivington's objection.

¶ 14    CSC also introduced Exhibit 4, which is an itemization of UC Health's charges.  It appears that CSC introduced this exhibit to prove identity as well, and to prove the amount owed.  Mr. Skivington didn't object.

¶ 15    Mr. Skivington contends that the trial court erred by admitting Exhibit 2 because (1) CSC didn't timely disclose it in accordance with C.R.C.P. 16.1(k)(6); and (2) it includes his personal identifying information, and so admitting it into evidence violated the Health Insurance Portability and Accountability Act (HIPAA) of 1996, 42 U.S.C. §§ 1320d to 1320d-9 (2018).  He contends that the court erred by admitting Exhibit 4 because it, too, contains his personal identifying information.  These contentions fail.

### 1.    Standard of Review

¶ 16    We review a trial court's evidentiary rulings for an abuse of discretion.  *Scholle v. Delta Air Lines, Inc.*, 2019 COA 81M, ¶ 16.  A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or based on a misapplication or misunderstanding of the law.  *Bd. of Cty. Comm'rs v. DPG Farms, LLC*, 2017 COA 83, ¶ 34.

## 2. Analysis

¶ 17    Rebuttal evidence "may take a variety of forms, including 'any competent evidence which explains, refutes, counteracts, or disproves the evidence put on by the other party, even if the rebuttal evidence also tends to support the party's case-in-chief.'" *People v. Welsh*, 80 P.3d 296, 304 (Colo. 2003) (quoting *People v. Rowerdink*, 756 P.2d 986, 994 (Colo. 1988)).  The party offering rebuttal evidence must show that the evidence is relevant to rebut the adverse party's claim, theory, witness, or other evidence.  *Id.*

¶ 18    At trial, CSC's counsel explained that CSC sought to introduce Exhibit 2 for the sole purpose of rebutting Mr. Skivington's anticipated defense — that UC Health had mistakenly identified him as the patient who had received the medical services at issue. The trial court admitted Exhibit 2 for that limited purpose.  And mistaken identity was, in fact, the defense Mr. Skivington raised after CSC's case-in-chief.  The exhibit therefore qualified as rebuttal evidence, admissible in the district court's discretion.

¶ 19    Mr. Skivington's position also rests on an overly restrictive interpretation of C.R.C.P. 16.1(k)(6).  True, that rule requires parties to identify and exchange trial exhibits at least thirty-five days before

trial, and C.R.C.P. 16.1(k)(1)(A) requires that documents relevant to a party's claims or defenses be included in a party's initial disclosures. *See also* C.R.C.P. 26(a)(1)(B). But the supreme court has held that the sanction of evidence preclusion for a failure to disclose in accordance with such rules "is inappropriate if the lateness of the disclosure is harmless to the other party." *Todd v. Bear Valley Vill. Apartments*, 980 P.2d 973, 979 (Colo. 1999). This is so even if the late disclosing party can't show a substantial justification for the violation: even in such a case, "the inquiry is not whether the new evidence is potentially harmful to the opposing side's case. Instead, the question is whether the failure to disclose the evidence in a timely fashion will prejudice the opposing party by denying that party an adequate opportunity to defend against the evidence." *Id.*

¶ 20 Mr. Skivington hasn't presented any coherent argument explaining how he was unfairly prejudiced by the admission of Exhibit 2. He had an adequate opportunity to respond to the exhibit at trial, and there was ample other evidence that he was the patient who had incurred the charges. And we can't help but note that Mr. Skivington's post-trial Rule 59(d) motion essentially

10

conceded that he was the patient who had been admitted to UC Health on the relevant date because of a stroke. *See In re Marriage of Antuna*, 8 P.3d 589, 593 (Colo. App. 2000) (no abuse of discretion in allowing rebuttal expert to testify despite claimed noncompliance with C.R.C.P. 26 disclosure requirement); *Rice v. Dep't of Corr.*, 950 P.2d 676, 681 (Colo. App. 1997) (no abuse of discretion in allowing unendorsed witness to testify in rebuttal where other party failed to explain how he was prejudiced).

¶ 21    Mr. Skivington's contention that the trial court violated HIPAA by admitting Exhibits 2 and 4 also fails. First off, he didn't raise this issue with the trial court, and we don't consider issues raised for the first time on appeal. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 n.5 (Colo. 1992) ("Arguments never presented to, considered or ruled upon by a trial court may not be raised for the first time on appeal."). But if HIPAA applies to any of the information in Exhibits 2 and 4, the proper remedy would have been to redact portions of the exhibits disclosing nonessential personal identifying information (or perhaps to receive the exhibits under seal), not to exclude the exhibits.

11

## C. Motion for a New Trial

¶ 22 Mr. Skivington contends that the trial court erred by denying his motion for a new trial because (1) irregularities in the trial proceedings prevented him from having a fair trial and (2) he produced newly discovered evidence that he couldn't have reasonably discovered before trial "that would change the result of the trial." Again, we aren't persuaded.

### 1. Standard of Review and Applicable Law

¶ 23 We review a trial court's ruling on a Rule 59 motion for a new trial for an abuse of discretion. *See Sch. Dist. No. 12 v. Sec. Life of Denver Ins. Co.*, 185 P.3d 781, 786 (Colo. 2008); *Aspen Skiing Co. v. Peer*, 804 P.2d 166, 172 (Colo. 1991). We won't disturb the court's ruling unless it was manifestly arbitrary, unreasonable, or unfair, or based on a misapplication or misunderstanding of the law. *DPG Farms*, ¶ 34.

¶ 24 As now relevant, under the rule, a trial court may grant a new trial on the grounds of "[a]ny irregularity in the proceedings by which any party was prevented from having a fair trial[,]" or "[n]ewly discovered evidence, material for the party making the application

12

which that party could not, with reasonable diligence, have discovered and produced at the trial[.]"  C.R.C.P. 59(d)(1), (4).

## 2.     Analysis

### a.     Irregularities in the Trial Proceedings

¶ 25     Mr. Skivington argues that irregularities in trial proceedings prevented him from having a fair trial.

¶ 26     First, he argues that the trial court's failure to allow him to respond to Exhibit 2 deprived him of a fair trial.  But contrary to his contention, the trial court gave Mr. Skivington multiple chances to respond to Exhibit 2 at trial.

¶ 27     Second, he argues that the court shouldn't have asked questions of CSC's counsel concerning the admissibility of Exhibit 2.  But he didn't raise this issue with the trial court, so we won't address it.  *Estate of Stevenson*, 832 P.2d at 721 n.5.

¶ 28     Third, he argues that the trial court rushed the trial, trying to get it done during a break in another trial.  He doesn't argue, however, that, as a result, he was unable to present any evidence he wished to introduce or to make any argument on the merits that he wished to make.  He argues instead that "[t]his caused the trial court . . . to be preoccupied with other things and unable to give full

mindfulness to this case." But the record doesn't bear out this conclusory assertion.

### b. Newly Discovered Evidence

¶ 29 Mr. Skivington asserted in his Rule 59 motion for a new trial that his stroke had caused him to sustain long-term memory loss of the event, and that he had started to recover his lost memory two days after the trial. He argued that his recovered memory helped him gain access to his UC Health patient portal, which allowed him to locate a report from the attending physician who had treated him after his stroke. The portion of that report on which Mr. Skivington relies provides as follows:

> DATE OF ADMISSION:
> February 28, 2017
>
> DATE OF DISCHARGE:
> March 1, 2017
>
> HOSPITAL COURSE:
> The patient was admitted via the Mobile Stroke Unit with a stroke syndrome. Telestroke neurologists advised t-PA. The patient was administered t-PA. On arrival to the ICU, he complained of being sleep-deprived and checked out against medical advice.

¶ 30 Mr. Skivington argues that this "newly discovered" evidence, which he couldn't have discovered before trial, would change the

14

result of the trial.  He says that the report proves that he couldn't have received medical services amounting to $30,536.10 because he discharged himself from the hospital immediately after arriving to the ICU.  His argument fails procedurally and substantively.

¶ 31     After being served with the complaint, Mr. Skivington knew that CSC was suing him for his failure or refusal to pay for medical services that UC Health claimed it had provided to him.  Had he acted prudently and diligently during the discovery phase of the case and requested any relevant documents UC Health may have had relating to the debt, he could have discovered the attending physician's report well before trial.  Indeed, he didn't even need to contact UC Health to obtain the document.  In his post-trial motion, he said that he obtained the document after trial by accessing UC Health's "patient portal."  His only explanation for not doing that sooner was that two days after trial he started to "recover memories" that he had in fact been in the hospital.  But his memory loss can't account for his failure to earlier access the patient portal.  Regardless whether he recalled the incident, he knew that CSC was suing him for a debt owed to UC Health, what services UC Health was claiming it had provided, and what UC Health was claiming he

15

owed. He knew as well the dates of his alleged stay at the hospital and had obtained documents from CSC (including UC Health documents) before and during the case. Thus, we conclude that the report isn't newly discovered evidence.

¶ 32 In any event, the trial court didn't abuse its discretion by denying Mr. Skivington's motion because the report wouldn't have changed the outcome of the trial. Mr. Skivington correctly notes that the report says that he discharged himself after arriving at the ICU.[2] But the report doesn't indicate that he did so immediately on arriving on February 28. To the contrary, it says, at least twice, that he did so the next day, March 1. And other evidence submitted by CSC also shows that he stayed at the hospital overnight.

### III. Conclusion

¶ 33 The judgment and order are affirmed.

JUDGE HARRIS and JUDGE BROWN concur.

---

[2] It doesn't say the ICU was his first treatment stop at the hospital.