The PEOPLE of the State of
Colorado, Petitioner,

v.

Theodore Alex TRUJILLO, Respondent.

No. 01SC434.

Supreme Court of Colorado,
En Banc.

July 1, 2002.

Ken Salazar, Attorney General, Laurie A. Booras, First Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Petitioner.

Suzan Trinh Almony, Broomfield, Colorado, Attorney for Respondent.

Justice BENDER delivered the Opinion of the Court.

## I. Introduction

In this case we consider whether a defendant's unwarned custodial statements may be used to rebut the theory of defense or to impeach a witness other than the defendant when the defendant does not testify.[1] The defendant, Theodore Trujillo, failed to attend a court proceeding in Jefferson County and a warrant was issued for his arrest. He was thereafter arrested in Denver on the warrant for violating his bail bond in the Jefferson County case. While in custody in Denver, and without being given *Miranda*[2] warnings, Trujillo made incriminating statements to police officers that he knew there was a warrant for his arrest.

Trujillo was then prosecuted in Jefferson County for the crime of violating bail bond conditions. The trial court ruled the statements were not made following *Miranda* warnings. Trujillo did not testify at trial. After the defense rested, the prosecution offered Trujillo's custodial statements through the testimony of a police officer to rebut Trujillo's defense that he possessed poor cognitive ability and therefore did not know about the hearing. On appeal the prosecution argues in the alternative that this evidence was properly admitted to impeach Trujillo's wife's testimony.

---

1. We granted certiorari on the question: "Whether a defendant's voluntary statement given before *Miranda* warnings can be used to impeach a witness other than a testifying defendant."

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The court of appeals reversed the conviction on the grounds that Trujillo's custodial statements were improperly admitted at trial to rebut defense witnesses other than the defendant. *People v. Trujillo*, 30 P.3d 760 (Colo.App.2000). We hold that a defendant's voluntary, unwarned, custodial statements may only be used to impeach the defendant if he testifies at trial. If the defendant does not testify at trial, such unwarned custodial statements may not be used either to rebut a defense theory or to impeach a witness other than the defendant. Because Trujillo did not testify at trial, the admission of his custodial statements was constitutional error, and our review of the record leads us to conclude that this error was not harmless beyond a reasonable doubt. Hence, we affirm the decision of the court of appeals to reverse the judgement of the trial court and to return this case to the trial court for a new trial.

## II. Facts And Proceedings Below

On February 3, 1997, Trujillo was scheduled to appear in Jefferson County Court in Golden. He failed to appear and a warrant was issued for his arrest. The warrant was then transferred to Jefferson County District Court. Trujillo was subsequently arrested on February 12, 1997 at the Warwick Hotel in Denver.

Following his arrest, two police officers asked Trujillo questions without first giving him *Miranda* warnings. Trujillo told the officers that he understood there was a warrant for his arrest and that at the time of the arrest he was fleeing to California.

A suppression hearing was held in a different case in Denver District Court on separate charges arising from his February 12 arrest in Denver. That court determined that Trujillo's statements were taken in violation of *Miranda*, and could not be used during the prosecution's case in chief as substantive evidence of the defendant's guilt. However, the court also ruled that the statements were made voluntarily and could be admitted on rebuttal for impeachment purposes if the defendant were to testify.

At trial in Jefferson County District Court, Trujillo did not testify. His mother, Alice Trujillo, testified that her son has a poor memory, had taken Ritalin in the past, and took special education classes in school. Similarly, Trujillo's wife, Shelly Trujillo, testified that her husband is very forgetful and that she takes care of organizing the household, including keeping track of her husband's obligations, such as court dates. Shelly Trujillo's day-timer page for February 3, 1997 was admitted into evidence. It reflected that her husband had a court appearance scheduled in Lakewood on February 3. It did not reflect that he was scheduled to appear in Golden.

Shelly Trujillo's testimony was vague and inconclusive. She testified that either Trujillo did not tell her the correct date or that she had recorded it incorrectly. At one point, the defendant's attorney asked Shelly Trujillo if her husband told her the date he had to be in court when he returned home from the preliminary hearing. The prosecutor objected on the grounds that the question called for hearsay. The court held that the answer was not offered to prove the truth of the matter asserted and was therefore not hearsay. Shelly Trujillo's answer did not indicate that her husband told her anything. She stated that he usually tells her about court dates after a hearing and that if he did not tell her, she would write it in the day-timer when she found out about it later.

After the close of the defendant's case, the prosecution offered the testimony of Sergeant David Fisher to impeach Shelly Trujillo's testimony and to rebut Trujillo's defense that he is generally unable to keep track of his appointments and was unaware of the scheduled court appearance on February 3, 1997.

The trial court did not hold a separate suppression hearing regarding the admissibility of Trujillo's statements but allowed argument on this issue by the parties out of the presence of the jury. The court also referred to the rulings of the Denver District Court regarding Trujillo's custodial statements. Although the Denver court ruled that Trujillo's statements would be admissible only to impeach him if he testified, the trial court in this case ruled that Trujillo's statements were admissible as evidence to

rebut the theory of defense that the defendant did not know about his court appearance because of his learning disabilities and poor memory. In addition, the trial court noted that the Denver District Court transcript did not indicate the statements were involuntarily made.

Thereafter, Sergeant Fisher testified that during a post-arrest interview, Trujillo told Fisher that Trujillo knew there was a warrant for his arrest and that on the day of his arrest he was in the process of fleeing to California.

During closing arguments, the prosecution argued Trujillo's unwarned custodial statements satisfied the mens rea element of "knowingly" that is required to find Trujillo guilty of the crime of violating bail bond conditions. The prosecution argued that because Trujillo told Sergeant Fisher that Trujillo was aware of the warrant and that he was fleeing the state, he knew about the Jefferson County court date which he failed to attend nine days earlier:

> [T]his is how you prove culpable mental state . . . . the best way to prove that is by the person's own statements. And what are the defendant's statements? That he knew there was a warrant for his arrest and that he was in the process of fleeing to California. It doesn't get any clearer than that. We have proven this case and we ask that you find him guilty. Thank you.

And:

> It says right here "culpable mental state" of course is an element and must be proven. . . . And the clear inference is when someone says they are fleeing—what did he say? What is the position of the defense that he is a confused fellow? What did the defendant say when he is finally captured nine days later? Did he say, "Geez, that court date in Jeffco, I spaced it. Sorry." Is that what he said? No, he is fleeing to California. He knew there was a warrant out for his arrest. I mean, that is clear.

The defense did not request, and the trial court did not provide, a limiting instruction informing the jury of the purpose for which it was to consider Trujillo's statements.

The jury convicted Trujillo of the crime of violating bail bond conditions. He was also adjudicated a habitual criminal and sentenced to imprisonment for six years. The court of appeals reversed Trujillo's conviction and vacated the habitual criminal adjudication on the grounds that Trujillo's unwarned custodial statements were improperly admitted at trial. The court reasoned that the United States Supreme Court's holding in *James v. Illinois*, 493 U.S. 307, 110 S.Ct. 648, 107 L.Ed.2d 676 (1990), precluded the use of defendant's unwarned statements to rebut the testimony of defense witnesses other than the defendant.

The prosecution appeals the court of appeals' holding to this court.

### III. Analysis

The prosecution argues that Theodore Trujillo's unwarned custodial statements were properly admitted to impeach Shelly Trujillo's testimony. The prosecution also argues that Theodore Trujillo's statements were admissible to rebut his defense that he did not know, due to cognitive disabilities, of his court appearance on February 3, 1997. Both parties concede that Trujillo's statements were illegally obtained since he was not advised of his *Miranda* rights before making them. Both parties also agree that Trujillo's statements were voluntary. Thus, neither the illegality of the police action nor the voluntariness of the statements are at issue here.

Analysis of this case requires us first to consider definitions of the terms impeachment and rebuttal. We then turn to the admissibility of a defendant's custodial statements in general, and apply these basic principles to whether Trujillo's statements were admissible.

### A. Definitions Of Impeachment And Rebuttal

Impeachment is a technique used to attack the truth-telling capacity of a witness. Impeachment may be accomplished by demonstrating the witness' bias, self-contradiction, poor character, defect in perceptive capacity, prior convictions or bad acts, or by contra-

dicting the witness on specific facts in her testimony. 1 John W. Strong, *McCormick on Evidence* § 33 (5th ed.1999).

■ This case involves only the impeachment technique of demonstrating the witness' self-contradiction by proof of her prior statement that is inconsistent with her present testimony.[3] *Id.* When impeaching with a prior inconsistent statement, it is axiomatic that the prior inconsistent statements must belong to the testifying witness. *Id.* § 34; 4 Joseph M. McLaughlin & Jack B. Weinstein, *Weinstein's Federal Evidence* § 613.04[1] (2d ed. 1997) ("To be admissible, ... the inconsistent statement must belong to the person being impeached by it."); *Summers v. State*, 102 Nev. 195, 718 P.2d 676, 680 (1986) ("The rule permitting the admission of impeaching prior inconsistent statements requires that the impeaching prior inconsistent statements be statements made by the witness to be impeached.").

At common law, impeachment evidence was not admissible as substantive evidence, but merely to attack the truth-telling capacity of a witness. *Montoya v. People*, 740 P.2d 992 (Colo.1987). However, by statute, such evidence may also be used substantively to prove an element of the case. For example, in criminal cases, section 16–10–201, 6 C.R.S. (2001),[4] permits admission of the witness' prior inconsistent statement as substantive evidence of the defendant's guilt if the foundational requirements of the statute are met. If the statutory requirements of section 16–10–201 are not met, or if a defendant's custodial statements are not made subsequent to *Miranda* warnings but are voluntary, then the statements are to be considered only as impeachment evidence. *People v. Saiz*, 32 P.3d 441, 446 (Colo.2001); *Montoya*, 740 P.2d

at 997 (providing as an example of when evidence may not be used substantively under section 16–10–201, "a prior custodial statement of an accused taken in violation of his *Miranda* rights and thus constitutionally admissible for the limited purpose of impeaching the accused's trial testimony").

■ Unlike impeachment by a prior inconsistent statement, which involves the concept of proof that the witness made statements inconsistent with his present testimony, rebuttal refers to contrary evidence and has two meanings: (1) "contradiction of an adverse party's witness," or (2) "[t]he time given to a party to present contradictory evidence or arguments." *Black's Law Dictionary* 1274 (7th ed.1999). The first definition goes to contradicting a specific witness. The second definition refers to a distinct section of a trial. It is evidence that "explains, refutes, counteracts, or disproves the evidence put on by the other party." *People v. Rowerdink*, 756 P.2d 986, 994 (Colo.1988). This type of rebuttal evidence is generally substantive in nature, may support the party's case-in-chief, *id.*, and is presented after the opposing party has presented its evidence. Thomas A. Mauet, *Fundamentals of Trial Techniques* § 1.8 (1980). Rebuttal evidence is admissible at the discretion of the trial court. *Rowerdink*, 756 P.2d at 994.

Despite the definitions set forth above, the terms impeachment and rebuttal are sometimes used interchangeably. For example, in this case, the Denver District Court, ruled that Trujillo's statements could be used "in rebuttal" if Trujillo testified at trial. For clarity in this case we will refer to impeachment as proof that the witness made state-

---

**3.** As discussed at length below, the admissibility of Trujillo's statements is a constitutional question. The constitutional issues preclude using these illegally obtained statements as contradiction evidence other than self-contradiction as established by *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

**4.** Section 16–10–201, 6 C.R.S. (2001), provides: Inconsistent statement of witness—competency of evidence (1) Where a witness in a criminal trial has made a previous statement inconsistent with his testimony at the trial, the previous inconsistent statement may be shown by any other-

wise competent evidence and is admissible not only for the purpose of impeaching the testimony of the witness, but also for the purpose of establishing a fact to which his testimony and the inconsistent statement relate, if:
(a) The witness, while testifying, was given an opportunity to explain or deny the statement or the witness is still available to give further testimony in the trial; and
(b) The previous inconsistent statement purports to relate to a matter within the witness's own knowledge.

ments inconsistent with his present testimony. When we use the term rebuttal, we will focus on the second definition above—that which is presented to contradict or refute the opposing party's case.

Using the terms impeachment and rebuttal as we have here defined them, we address the issue in this case: whether Trujillo's unwarned custodial statements may be used to impeach a witness other than himself and whether these statements are admissible to rebut his theory of defense.

## B. Admissibility Of A Defendant's Custodial Statements

We turn now to a discussion of the admissibility of a defendant's custodial statements. When determining admissibility, courts must always protect the defendant's fundamental privilege against being compelled to testify against himself in a criminal case as embodied in the Fifth Amendment. U.S. Const. amend. V; *People v. Mozee*, 723 P.2d 117, 122 (Colo.1986).

■ A criminal defendant's privilege against self-incrimination permits him to remain silent in the face of interrogation while in custody and at trial. *Miranda*, 384 U.S. at 467–68, 86 S.Ct. 1602. Unless a defendant is fully warned of his Fifth Amendment rights and knowingly, voluntarily, and intelligently waives those rights, his custodial statements are considered illegally obtained and are inadmissible as substantive evidence against the defendant.[5] *People v. Dracon*, 884 P.2d 712, 716 (Colo.1994); *Mozee*, 723 P.2d at 123.

With these fundamental underpinnings in mind, there are several rules which affect whether a defendant's unwarned custodial statements may be admitted at trial. The applicability of these rules depends on several factors, including whether a defendant's custodial statements are given pursuant to *Miranda*'s constitutional safeguards that are designed to ensure protection of the defendant's privilege against compulsory self-incrimination, whether the statements are vol-

untarily made, and whether the defendant testifies at trial. Depending on the circumstances, a defendant's custodial statements may be inadmissible altogether, offered as substantive evidence of guilt, or offered to impeach the testifying defendant's credibility.

■ If a defendant's custodial statements are given pursuant to proper *Miranda* warnings and are voluntary, then the statements are generally admissible as substantive and impeachment evidence. *Miranda*, 384 U.S. at 478, 86 S.Ct. 1602. Of course, rules of evidence will affect the statement's admissibility. On the other hand, a defendant's involuntary custodial statements, irrespective of whether the defendant is warned of his privilege against self-incrimination, are not admissible at trial for any purpose. *Mincey v. Arizona*, 437 U.S. 385, 397–98, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *People v. Branch*, 805 P.2d 1075, 1081 (Colo.1991).

When a defendant in custody is questioned and is not warned of his *Miranda* rights, his statements are considered illegally obtained. *Miranda*, 384 U.S. at 479, 86 S.Ct. 1602; *State v. Jordan*, 891 P.2d 1010, 1014 (Colo. 1995). Such unwarned custodial statements, whether or not voluntary, are inadmissible in the "government's direct case, or otherwise, as substantive evidence of guilt." *United States v. Havens*, 446 U.S. 620, 628, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980). *See also Jordan*, 891 P.2d at 1014.

■ Unlike involuntary custodial statements, voluntary unwarned custodial statements may be admissible at trial to impeach the defendant. This is the only judicially recognized purpose for which the defendant's unwarned but voluntary statements may be used. *Harris v. New York*, 401 U.S. at 225–26, 91 S.Ct. 643 (1971); *James*, 493 U.S. at 312, 110 S.Ct. 648; *Branch*, 805 P.2d at 1081; *People v. Cole*, 195 Colo. 483, 490, 584 P.2d 71, 76 (1978). If the defendant testifies at trial and his testimony is inconsistent with his unwarned, voluntary, custodial statements, then the prior statements are admissible to impeach his credibility. *Harris*, 401

---

**5.** *Miranda* addressed other rights as well, for example the right to counsel during interrogation. However, only the Fifth Amendment privilege against compulsory self-incrimination is at issue here.

U.S. at 225, 91 S.Ct. 643; *James,* 493 U.S. at 312, 110 S.Ct. 648; *Branch,* 805 P.2d at 1081; *People v. Cole,* 195 Colo. at 490, 584 P.2d at 76.

### C. When The Defendant Does Not Testify, His Unwarned Custodial Statements Are Not Admissible As Substantive Evidence Of Guilt Or For Impeachment Purposes

■ A defendant's unwarned custodial statements may not be admitted against him as substantive evidence. *Miranda,* 384 U.S. at 479, 86 S.Ct. 1602. Unless a defendant waives his constitutional privilege against self-incrimination, he shall not be compelled to be a witness against himself at trial. A defendant possesses an absolute right not to testify at trial. Her decision not to testify does not constitute a waiver of her privilege against self-incrimination. *Mozee,* 723 P.2d at 123.

■ Admission at trial of a defendant's prior custodial statements as substantive proof of guilt is tantamount to compelling the defendant to testify against himself. If the defendant waives his privilege against self-incrimination before giving his statements by acknowledging his *Miranda* rights or by testifying at trial, his statements may be admitted without offending the Constitution. On the other hand, if his prior custodial statements are unwarned, and the defendant does not testify, admission of the defendant's custodial statements as evidence of guilt during the state's case-in-chief or during rebuttal, violates his constitutional privilege against self-incrimination.[6] *Branch,* 805 P.2d at 1081.

■ Having decided that a defendant's unwarned custodial statements may not be admitted as substantive rebuttal evidence, we turn now to the question of whether such statements may be admitted to impeach a witness other than the defendant. The United States Supreme Court's jurisprudence as

well as the basic definition of impeachment by prior inconsistent statements lead us to conclude that a defendant's unwarned custodial statements may only be used to impeach the defendant himself if he testifies at trial and may not be used to impeach other defense witnesses.

The United States Supreme Court has established a line of cases holding that the impeachment exception to the exclusionary rule only permits impeachment of the defendant with his own unwarned statements. The defining case is *Harris* which created this impeachment exception. Colorado explicitly followed the *Harris* rule in *Cole.* Neither *Harris* nor *Cole* considered whether the exclusionary rule precluded impeachment of a witness with a non-testifying defendant's custodial statements. Although we have not yet considered this precise issue, the United States Supreme Court decided this question in *James.* In that case, the Court specifically prohibited using a defendant's unwarned custodial statements to impeach a defense witness when the defendant did not testify. *James,* 493 U.S. at 320, 110 S.Ct. 648.

The prosecution argues that *James* is a Fourth Amendment case and is inapplicable here. However, a close reading of *James* demonstrates that its rationale is as dispositive when the statement was obtained in violation of the Fifth Amendment as when evidence is obtained in violation of the Fourth Amendment. *James* rests upon Supreme Court precedent dealing with the exclusion of evidence "illegally obtained" in violation of both the Fourth and Fifth Amendments. *James,* 493 U.S. at 312–13, 110 S.Ct. 648 (holding that statements obtained as a fruit of an illegal search cannot be used to impeach a defense witness other than the defendant)(citing *Harris,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (holding that defendant's unwarned custodial statements properly admitted to impeach defendant's perjurious trial testimony); *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98

---

6. The only Colorado case to consider the issue of admitting a defendant's unwarned custodial statements when the defendant does not testify is *People v. Evans,* 630 P.2d 94 (Colo.App.1981). The court of appeals held in that case that such statements may not be admitted against the de-

fendant as substantive rebuttal evidence. *Evans,* 630 P.2d at 96. The court relied on the *Harris* line of cases which establishes that a defendant's unwarned custodial statements may only be admitted for impeachment, not substantive evidence. *Id.*

L.Ed. 503 (1954) (holding that questions regarding unlawfully seized evidence properly admitted on cross to expose defendant's perjurious trial testimony)). In fact, the majority opinion in *James* refers explicitly to the Fourth Amendment only twice in eleven pages.

*James* relies heavily on the reasoning of *Harris*, a Fifth Amendment case, which in turn is based on the reasoning in *Walder*, a Fourth Amendment case. In *Harris*, the defendant testified at trial and his prior inconsistent, unwarned but voluntary statements were used to impeach him. The Court applied the impeachment exception to the exclusionary rule as set forth in *Walder*. The Court was "not persuaded that there is a difference in principle that warrants a result different from that reached by the Court in *Walder*" and adopted the *Walder* balancing test for a Fifth Amendment violation. *Harris*, 401 U.S. at 225, 91 S.Ct. 643.

Cases following *Walder* and *Harris* express the notion that the impeachment exception to the exclusionary rule applies equally in Fourth and Fifth Amendment cases. For example, in *Michigan v. Tucker*, 417 U.S. 433, 446, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974),[7] the Court discussed the deter-

rent rationale of the exclusionary rule as applied to Fourth Amendment search-and-seizure violations. It explained, "[T]his rationale would seem applicable to the Fifth Amendment context as well." *Tucker*, 417 U.S. at 447, 94 S.Ct. 2357.

Our research of post-*Harris* cases shows that most jurisdictions recognize that *James* continues the *Harris* and *Walder* line of cases to hold that in the context of either a Fourth or Fifth Amendment violation, illegally obtained statements may be used to impeach a testifying defendant but not for substantive evidence of guilt. *See, e.g., United States v. Taylor*, No. 92CR322, 1992 WL 249969, at *7 n. 4, 1992 U.S. Dist. LEXIS 14272, at *13 n. 4 (S.D.N.Y. Sept. 22, 1992); *Wilkes v. United States*, 631 A.2d 880, 886–87 (D.C.App.1993); *State v. Burris*, 145 N.J. 509, 679 A.2d 121, 132–33 (1996).[8] Instead of being rooted solely in the Fourth Amendment, the reasoning of *James* rests on the balancing test used in a variety of cases that have applied the exclusionary rule. The balancing test weighs the truth-seeking function of a trial court with the deterrent effect of excluding illegally obtained evidence. *James*, 493 U.S. at 313–14, 110 S.Ct. 648;

---

7. In *Tucker*, the defendant was not given full *Miranda* warnings and his statements to police were therefore excluded. However, during interrogation he had named an alibi witness who later gave the police information that incriminated the defendant. The defendant testified at trial and the alibi's testimony was admitted to impeach the defendant. *Tucker*, 417 U.S. at 437, 94 S.Ct. 2357.

The Supreme Court upheld the trial court. It balanced the deterrent rationale of the exclusionary rule with the truth-seeking function of the courts to determine that the alibi's testimony could be admitted to expose the defendant's perjurious testimony. *Id.* at 446–49, 94 S.Ct. 2357.

8. The prosecution argues that *State v. Walton*, 41 S.W.3d 75 (Tenn.2001), suggests a different result than our holding in this case. To some extent this case suggests a constitutional theory differing from the reasoning we adopt here. However, the question of law and factual background before that court distinguishes it from this case. *Walton* considered whether the derivative evidence rule applies to physical evidence seized as a result of interrogation that violated the Fifth Amendment. *Id.* at 78.

Without the benefit of *Miranda* warnings, Walton made incriminating statements and showed

officers the location of the stolen property when law enforcement officers went to his house to investigate burglaries. *Id.* at 78–79.

After a grand jury proceeding in which Walton's statements and the property were admitted, he was indicted on burglary charges. He then filed a motion to suppress the statements and physical evidence obtained by the officers. The motion to suppress was denied and he pleaded guilty to the charges, reserving a certified question of law regarding the motion to suppress. *Id.* at 79–81.

The Tennessee Supreme Court held that Walton's Fifth Amendment rights had been violated because he was in custody and interrogated without *Miranda* warnings. It also held that all custodial statements made by the defendant were inadmissible, but the physical evidence obtained as a result of the interrogation was admissible against him. *Id.* at 95–96.

*Walton* deals with the scope of *Miranda* rights as applied to physical evidence obtained as a "fruit of the poisonous tree." The present case considers the scope of the impeachment exception to the exclusionary rule with regard to oral statements when the defendant does not testify.

*Walton* follows the Supreme Court's reasoning in *Elstad* to reach a result with which we do not take issue. *See infra*, pages ——-——.

Oregon v. Hass, 420 U.S. 714, 722–23, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); Michigan v. Tucker, 417 U.S. at 446, 94 S.Ct. 2357; Harris, 401 U.S. at 225, 91 S.Ct. 643.

In Harris, the Court determined that the test weighed in favor of admitting unwarned custodial statements for impeachment purposes to prevent defendants from giving perjurious testimony at trial. It also held that admission of statements for such a limited purpose would do little to encourage further improper police conduct.

In James, the Court applied the balancing test to refuse to extend the impeachment exception to the exclusionary rule to all defense witnesses. In holding that such an expansion would "frustrate rather than further the purposes underlying the exclusionary rule," the Court reasoned that admission to impeach other witnesses would undermine the deterrent effect and would not promote the truth-seeking function of the court. James, 493 U.S. at 313–14, 110 S.Ct. 648.

The Court also noted that impeachment of other witnesses with the defendant's prior statements would likely chill the defendant's ability to present his best defense. For example, the defendant may be less willing to call witnesses for fear his own prior statements will be admitted to impeach them. Id. at 314–15, 110 S.Ct. 648.

We agree with the reasoning of the Supreme Court that admission of a defendant's unwarned custodial statements to impeach defense witnesses other than the defendant would erode the deterrent effect of the exclusionary rule, while doing little to limit perjury at trial. If a defendant's unwarned custodial statements may be admitted to impeach other defense witnesses, then the exclusionary rule would be severely eroded because a defendant's custodial statements could be admitted much more frequently at trial, and whether the defendant testifies would have no bearing on the admission of his statements. Hence, following Supreme Court precedent, we hold that the Fifth Amendment exclusionary rule prohibits the use of the defendant's unwarned statements to impeach a defense witness when the defendant does not testify.

To support its argument that James is a Fourth Amendment case that is not relevant here, the prosecution argues that the rationale of Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), should govern here and that the court of appeals erred in not following it. In that case, the Supreme Court held that the taint or the scope of the "fruit of the poisonous tree" doctrine involving a Fifth Amendment violation was much narrower than that which involves a Fourth Amendment violation.

We are unpersuaded by the prosecution's argument. Since the 1954 Walder case interpreting the federal Weeks[9] exclusionary rule, the Supreme Court's precedent has consistently applied the James balancing analysis to determine the scope of the impeachment exception irrespective of whether the statement or evidence was seized contrary to the Fourth or the Fifth Amendment.

It is the Harris–James balancing test that governs our analysis here. The Elstad case concerns the scope of the "fruit of the poisonous tree" doctrine with regard to Fifth and Fourth Amendment violations. Therefore, the holding in Elstad is irrelevant to our discussion in this case.

By rejecting the rationale of Elstad with regard to this case, we do not mean to imply that the Elstad holding does not remain in full force and effect. Recently, the Court in Dickerson, 530 U.S. 428, 444, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000), made clear that the Miranda warnings are rooted in the Constitution. In Dickerson, the Court also noted with approval the Elstad principle that "unreasonable searches under the Fourth Amendment are different from unwarned interrogation under the Fifth Amendment." Dickerson, 530 U.S. at 441, 120 S.Ct. 2326. We conclude that Elstad retains its full vitality and disapprove of the court of appeals' opinion to the extent that the might be read to the contrary.

Independent of the constitutional doctrine discussed above, the fundamental rules of impeachment by prior inconsistent state-

9. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

ments mandate that proof of the inconsistent statements must be uttered by the person sought to be impeached. Logic tells us that only the speaker of the statement may be impeached in this way, that is, by her own prior inconsistent statements. Hence, if the defendant does not testify, then she cannot be impeached by her own earlier inconsistent statement.

## D. Exceptions To Inadmissibility Of A Defendant's Unwarned Custodial Statements When The Defendant Does Not Testify

Our research reveals that no federal or state court has admitted a defendant's unwarned custodial statements to impeach other defense witnesses when the defendant does not testify, with two narrow exceptions. The first occurs when a psychiatric or other expert testifies about her opinion which is based on what the defendant told her, and the defendant's unwarned custodial statements would lead to a different opinion. *Wilkes*, 631 A.2d at 889. The second occurs when a defense witness testifies specifically about what the defendant told her, i.e., the defendant's hearsay is admitted, and he may then be impeached as a hearsay declarant with his own unwarned custodial statements. *Appling v. State*, 904 S.W.2d 912, 917 (Tex. App.1995). We are not called upon to address either of these circumstances here.

## E. There Is No Exception To The Exclusionary Rule Which Permits Admission Of Trujillo's Unwarned Custodial Statements

Neither of the two exceptions to the *Harris–James* rule of exclusion apply here. Rather, the prosecution asks us to carve out a new exception. The proposed exception would expand the *Harris* rule to permit use of a defendant's voluntary but unwarned custodial statements to rebut defense evidence or to impeach a witness other than the defendant. This exception would require the creation of a rule that contravenes the United States Supreme Court's holding and reasoning in *Harris* and *James*. Such a rule would also require expansion of our own impeach-

ment exception as set forth in *Cole* and *Branch*.

In this case, Trujillo's statements are unwarned but voluntary. His statements may only be used to impeach his trial testimony if he waives his privilege against self-incrimination. Both parties concede that Trujillo did not waive his *Miranda* rights during the police questioning or at trial. No evidence in the record suggests otherwise. Hence, Trujillo's statements could not be used as substantive proof of the crime charged.

We hold that it was error for the trial court to admit Trujillo's unwarned custodial statements to rebut the defense that he had cognitive disabilities and did not know that he was supposed to appear in court. We note that while the defendant's statements that he knew there was a warrant for his arrest and that he was fleeing to California are not necessarily contrary to his defense that he did not know about his court date, these unwarned statements provided ample contrary evidence for the prosecution to argue that the defense was untrue. The prosecutor told the jury that Trujillo's statements to Denver police on February 12, 1997 constituted evidence that he knew he had to be in Jefferson County Court on February 3, 1997. Permitting the use of unwarned custodial statements as substantive evidence when the defendant does not testify at trial would violate the Fifth Amendment privilege against self-incrimination.

We turn now to the prosecution's alternative argument for admissibility. Trujillo did not testify nor did Shelly Trujillo testify as to what her husband specifically told her about the February 3 court date. Thus, it would be constitutional error for the trial court to admit Trujillo's custodial statements to impeach Shelly Trujillo's testimony because the Fifth Amendment prohibits use of a defendant's unwarned custodial statements to impeach a defense witness when the defendant does not testify.

Additionally, it would be error for the trial court to admit Trujillo's custodial statements to impeach Shelly Trujillo's testimony because such a use of Trujillo's statements does not meet the definition of impeachment.

## F. The Error Was Not Harmless Beyond A Reasonable Doubt

Having determined that constitutional error occurred in this case, we turn to the question of whether the error was harmless.

██ This case involves the type of constitutional error known as trial error—that which occurred " 'during the presentation of the case to the jury and ... may therefore be quantitatively assessed in the context of other evidence presented ...' " *Blecha v. People*, 962 P.2d 931, 942 (Colo.1998) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 307–08, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). An appellate court must assess the error in light of the other evidence in the case " 'to determine whether its admission is harmless beyond a reasonable doubt.' " *Id.*

Fifth Amendment violations are subject to this trial error standard. *Fulminante*, 499 U.S. at 310, 111 S.Ct. 1246. The prosecution bears the burden of proving that Trujillo's unwarned custodial statements did not contribute to his conviction or that the error was harmless beyond a reasonable doubt. *Blecha*, 962 P.2d at 942. If there is a reasonable probability that Trujillo could have been prejudiced by the error, then it is not harmless. *Id.*

There are several factors that the appellate court should consider in determining whether the error was harmless: the importance of Trujillo's statements to the prosecution's case, the overall strength of the prosecution's case, whether the probative value of the statements was cumulative, and the presence or absence of corroborating or contradictory evidence on the facts asserted in the statements. *Id.* at 943.

██ One of the two contested elements that the prosecution needed to prove in this case was that Trujillo "knowingly" failed to appear for the February 3 court date. The prosecution had two pieces of evidence to satisfy the mens rea element of the crime. The first was that Trujillo attended and participated in the scheduling hearing three months before February 3. The second piece of evidence was Trujillo's custodial statement to Denver police that he knew there was a warrant for his arrest and that he was fleeing to California.

The prosecution admitted no additional evidence to corroborate Trujillo's statements to Denver police. Trujillo did not testify. His custodial statements supplied the only direct evidence that he knew there was a warrant for his arrest or that he was fleeing to California. Additional prosecution evidence was directed toward proving Trujillo's general cognitive abilities, his wife's role in helping him, where he was supposed to be on February 3, and the extent of his participation at the scheduling hearing that was held the prior November.

The prosecution argued to the jury in closing that Trujillo's custodial statements constituted evidence of his guilt of the crime of violating bail bond conditions—that he knew he was to be in Jefferson County Court on February 3rd.

Thus, our review of the record convinces us that the admission of Trujillo's unwarned custodial statements was not harmless error beyond a reasonable doubt and that the evidence was likely prejudicial.

## IV. Conclusion

For the reasons discussed, we affirm the decision of the court of appeals to reverse the judgement of the trial court and to return this case to the trial court for a new trial.

Justice COATS concurs in the judgment only, and Justice KOURLIS and Justice RICE join in the concurrence.

Justice COATS, concurring in the judgment only:

I understand the majority to hold that if the admission of a statement in the case-in-chief against a defendant would violate the *Miranda* rule, that statement cannot be used even for impeachment purposes unless the defendant testifies at trial. Because it seems clear to me that the defendant's custodial statement in this case did not adequately contradict the testimony of any defense witness, I consider it unnecessary to reach the broader question addressed by the majority. Because I also have concerns about various aspects of the majority's discussion of im-

peachment, its failure to distinguish the bar of the *Miranda* rule from the Fourth Amendment exclusionary rule, and its understanding of *James v. Illinois*,[1] generally, I concur only in the judgment of the court.

Initially, I take issue with the majority's distinction between "impeachment" and "rebuttal," and its contention that this case involves only the technique of impeachment by self-contradiction. *See* maj. op. at 319–321. I do not believe its rigid use of these terms comports with historical usage in this jurisdiction, and more importantly, it does not parallel United States Supreme Court usage in formulating the doctrines at issue here. *See, e.g., United States v. Havens*, 446 U.S. 620, 623, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980)(referring to evidence impeaching defendant's credibility as "rebuttal evidence"); *Harris v. New York*, 401 U.S. 222, 228, 91 S.Ct. 643, 28 L.Ed.2d 1 (Brennan, J., dissenting: characterizing *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), as holding that exclusionary rule would not bar the Government from "rebutting" defendant's testimony with tainted evidence). Because the distinction is unnecessary to make clear the difference between evidence that merely discredits a witness and substantive evidence of guilt, I would avoid its potential impact on matters not before us by omitting it altogether.[2] Rather than involving only impeachment by self-contradiction, this case is before us precisely because it poses the question whether custodial statements of a defendant can be used to contradict other defense witnesses.

Impeachment is not generally understood as being limited to confronting a witness with his prior inconsistent statements but includes any challenge to credibility, including showing bias or interest, proving a lack of capacity to perceive or remember, demonstrating a reputation for untrustworthiness, or contradicting the substance of a witness' statements. *See* John W. Strong, *McCormick on Evidence* § 33 (5th ed.1999)(relied on by the majority at 319). In *James*, the Supreme Court referred to "impeachment through contradictory evidence" rather than impeachment by prior inconsistent statements. *James*, 493 U.S. at 315, 110 S.Ct. 648. Although the contradictory evidence admitted to impeach in *James* was the defendant's own prior inconsistent statement, the cases upon which *James* relied that developed the impeachment doctrine approved of the contradiction of trial testimony by illegally obtained physical evidence. *See Havens* 446 U.S. at 626–27, 100 S.Ct. 1912 (admitting illegally obtained T-shirt to impeach defendant's denial of having connection to pieces of same shirt found in possession of co-conspirator); *Walder*, 347 U.S. at 65, 74 S.Ct. 354 (admitting evidence of unlawfully seized heroin to impeach defendant's testimony that he never possessed narcotics). Since the use of physical evidence to impeach involves neither "self-contradiction" nor prior statements of the defendant, the majority's restrictive definition of impeachment is clearly not that intended by the *James* court. I agree of course that if "impeachment" is defined to include only contradiction by a witness' own prior statements, by definition the defendant is the only person who can be impeached with his unwarned custodial statements. I do not, however, find the majority's postula-

---

1. 493 U.S. 307, 110 S.Ct. 648, 107 L.Ed.2d 676 (1990).

2. Perhaps most prominently, these terms have been at the heart of a debate over the obligation to endorse witnesses, involving pronouncements that are arguably inconsistent. *See People v. Cobb*, 962 P.2d 944, 953 (Colo.1998) (Kourlis, J., dissenting: finding a distinction but characterizing it as "a slippery one," based in part on the collateral versus direct nature of the evidence); *People v. Terry*, 720 P.2d 125, 132 (Colo.1986) (Vollack, J., concurring in part and dissenting in part: relying on *People v. Vollentine*, 643 P.2d 800 (Colo.App.1982), distinguishing "rebuttal testimony" that is introduced to "refute a de-

fense," from "rebuttal testimony" that is "introduced solely to impeach"); *People v. Muniz*, 622 P.2d 100, 102–03 (Colo.App.1980) (distinguishing "rebuttal testimony which refutes alibi evidence and impeachment testimony which does not contradict alibi evidence but does attack the credibility of defense witnesses on collateral matters," in that case, by attacking their veracity concerning the activities of the defendant before the crime); *see also Palmer v. People*, 162 Colo. 92, 424 P.2d 766 (1967); *Schreiner v. People*, 95 Colo. 392, 36 P.2d 764 (1934); *Ingles v. People*, 90 Colo. 51, 6 P.2d 455 (1931); *People v. Hamrick*, 624 P.2d 1333 (Colo.App.1979), aff'd, 624 P.2d 1320 (Colo.1981).

tion of such a restrictive definition helpful in deciding the intent of the Supreme Court because it predetermines the result.

Unlike the majority, I do not believe the United States Supreme Court in *James* intended to define the limitations imposed by the *Miranda* rule on the use of a defendant's statements for impeachment. *James* forbade the impeachment of another witness with a statement of the defendant that had been illegally obtained in violation of the Fourth Amendment's prohibition against unreasonable seizures. In doing so, it openly balanced the truth-seeking objective of our legal system against the privacy values protected by "the rule excluding evidence seized in violation of the Fourth Amendment." *James* 493 U.S. at 311, 319, 110 S.Ct. 648. Despite the Court's reference to both Fourth and Fifth Amendment cases in recounting the development of the impeachment doctrine, I find nothing in *James* to suggest that the *Miranda* rule, which protects the Fifth Amendment privilege against self-incrimination, necessarily bars the use of impeachment evidence to the same extent as the Fourth Amendment exclusionary rule.

The Supreme Court has distinguished the nature and purposes of the *Miranda* rule from those of the exclusionary rule on a number of occasions, both before and after *James*. *See Dickerson v. United States*, 530 U.S. 428, 441, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000)(referring to *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), as holding that they are different); *Elstad*, 470 U.S. at 304–08, 105 S.Ct. 1285 (subsequent custodial statements not excluded as fruit of earlier *Miranda* violation); *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974)(testimony of witness discovered through *Miranda* violation not barred by *Miranda* rule) [3]; *cf. Withrow v. Williams*, 507 U.S. 680, 686–89, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993)(distinguishing *Miranda* violation from Fourth Amendment violation for purposes of habeas corpus review based on its different purposes). While we, unlike many courts, have understood the

*Miranda* rule to bar certain kinds of derivative evidence, much like the exclusionary rule, *see People v. Breidenbach*, 875 P.2d 879 (Colo.1994)(excluding marijuana plants as fruit of *Miranda* violation); 3 Wayne R. La-Fave, et. al., *Criminal Procedure*, § 9.5(b) (1999), we have also readily acknowledged their differences. *See People v. T.C.*, 898 P.2d 20, 27 (Colo.1995)(adopting rule of *Michigan v. Tucker*); *People v. Trujillo*, 773 P.2d 1086 (Colo.1989)(adopting rule of *Oregon v. Elstad*).

Unlike the exclusionary rule, which exists for the purpose of protecting privacy interests by deterring future police violations of the constitutional prohibition against unreasonable searches and seizures, the *Miranda* rule protects the privilege against self-incrimination by barring the use of unwarned custodial statements to incriminate the defendant. Although clearly a constitutional rule that cannot be overruled by legislation, *see Dickerson*, 530 U.S. at 431–32, 120 S.Ct. 2326, the *Miranda* rule's precise theoretical basis and scope remain somewhat unclear. LaFave § 6.5(e)(Supp.2002). With regard to admission solely for impeachment purposes rather than as substantive evidence of guilt, it is not difficult to envision the imposition of limitations on the use of voluntary statements acquired without the benefit of the prophylactic *Miranda* warnings that are different from the limitations imposed on the use of evidence obtained by unconstitutional searches and seizures. In the latter context, the extent to which impeachment is allowed depends largely upon its impact on the deterrent effect of the exclusionary rule. In the former context, it is not clear that impeachment use of a defendant's statements is incriminating at all. Particularly, with respect to prophylactic rules, the applicability of which is peculiarly within the power of the Supreme Court, I am reluctant to announce a rule excluding more evidence than has already been mandated by that Court.

In any event, I do not believe this case requires us to anticipate the Supreme Court. Impeachment by illegally obtained evidence,

---

**3.** Unlike the majority, *see* maj. op. at 323 n. 7, I understand *Tucker* not as an impeachment case, but as holding that the *Miranda* rule does not extend to the testimony of witnesses discovered through voluntary but unwarned custodial interrogation. *See People v. T.C.*, 898 P.2d 20, 27 (Colo.1995).

even of the defendant himself, is permissible only if it presents a direct conflict or contradiction with the witness' trial testimony. *See LeMasters v. People,* 678 P.2d 538, 543 (Colo. 1984). In the case before us, the defendant's statement that he actually knew he was to appear in court on the day in question in no way conflicted with or made any less true or accurate his mother's testimony concerning his history of poor memory or his wife's testimony about her usual practice of recording his court dates, which was not done in this case. While the testimony of both witnesses would clearly have been less probative of the defendant's lack of knowledge in light of his admission, neither witness contradicted the defendant's statement or testified to a contradictory statement of the defendant.

To determine that the evidence in this case was erroneously admitted, it is therefore sufficient that the defendant's pre-trial statement, made inadmissible in the prosecution's case-in-chief by the *Miranda* rule, could be admitted for impeachment purposes only to the extent that it was directly contradictory of trial testimony. Defined this narrowly, impeachment of another witness with the defendant's excluded custodial statements should rarely become an issue unless the testimony involves contradictory representations of the defendant himself. As to that eventuality, even the majority appears to have reserved judgment. Maj. op. at 325. Given the absence of any pressing need and the remaining uncertainty surrounding application of the *Miranda* rule, I see no merit in gratuitously venturing a prediction about the Supreme Court's ultimate resolution of this question.

Because I believe the defendant's pre-trial custodial statement was not directly contradictory of the testimony of any defense witness, I would affirm the court of appeals' order to remand for a new trial. Because I also consider various aspects of the majority's rationale both questionable and unnecessary, I concur in the judgment only.

Justice KOURLIS and Justice RICE join in the concurring opinion.