The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Matthew SUMMITT, Defendant–Appellant.

No. 02CA1483.

Colorado Court of Appeals, Div. I.

April 8, 2004.

Rehearing Denied May 27, 2004.

Certiorari Granted Jan. 10, 2005.

Ken Salazar, Attorney General, Deborah Isenberg Pratt, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge WEBB.

Defendant, Matthew Summitt, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree kidnapping, § 18–3–302(1), C.R.S.2003; sec-

ond degree assault, § 18–3–203(1)(g), C.R.S. 2003; and domestic violence, §§ 18–6–800.3 and 18–6–801, C.R.S.2003. We reverse and remand for further proceedings.

Defendant challenges the admission of evidence that he refused to submit to arrest; the constitutionality of the second degree assault statute, both facially and as applied; the sufficiency of the evidence that the victim sustained serious bodily injury; and the propriety of the prosecutor's closing argument. We conclude that admission of the arrest evidence as consciousness of guilt was error, which was not harmless beyond a reasonable doubt.

After an evening of drinking in a bar, the victim drove defendant back to a house where she was staying with a relative and at which he had parked his car. According to the People's evidence, as they exited her car an argument ensued. Defendant grabbed the victim, forced her into his car, and drove away. After traveling a short distance, the car went into the ditch and sustained a flat tire. As defendant worked on the tire, the victim twice tried to flee. Both times, defendant forced her back into the car.

Defendant then drove off without having fixed the tire. The victim demanded that defendant stop the car. While the car was moving, defendant pushed her out and she sustained injuries. Defendant then drove her back to the relative's home. The relative took the victim to a hospital emergency room. Defendant accompanied them and, after staying at the hospital for a time, returned to his mother's home, where he lived.

Two sheriff's deputies spoke to the victim at the hospital and one of them then went to defendant's residence, but without a warrant for his arrest. When the deputy arrived, Brighton police officers at the scene told him that defendant was refusing to come out of the house, although earlier he had given the officers his driver's license through a screen door.

The deputy attempted to make contact with defendant, who the deputy understood was still in the house, but succeeded only in talking to his mother. The deputy called his sergeant and told him that defendant was not coming out of the house. Ten or fifteen minutes later, the sergeant arrived, and they both again spoke only with defendant's mother. She did not allow them into the house. They then told her that if defendant did not surrender, they would "sit on the house and obtain a search [sic] warrant for his arrest." However, when the second deputy who had interviewed the victim at the hospital arrived and approached the door, defendant came out of the house and was arrested.

## I.

■ Defendant first asserts the trial court erred in admitting, over his objection, testimony concerning his refusal to come out of the home and submit to arrest, which the prosecution argued and the court told the jury related to defendant's consciousness of guilt. We conclude the court abused its discretion and the error was not harmless beyond a reasonable doubt.

## A.

■ A reviewing court may not reverse a decision to admit or exclude evidence unless the trial court has abused its discretion. *People v. Welsh,* 80 P.3d 296 (Colo.2003). A trial court abuses its discretion when an evidentiary ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Perry,* 68 P.3d 472 (Colo.App.2002).

■ Post-offense behavior, such as a defendant's concealment, flight, attempted suicide, alteration of appearance, destruction of evidence, use of aliases, or threats against witnesses, may be admissible as evidence of consciousness of guilt. *People v. Eggert,* 923 P.2d 230 (Colo.App.1995).

■ Evidence that a defendant asserted a constitutional right may be admitted to impeach when the defendant testifies at trial. *See Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980)(evidence of pre-arrest silence). However, such evidence is generally inadmissible to show consciousness of guilt. *See People v. Campbell,* 187 Colo. 354, 531 P.2d 381 (1975)(the prosecution may not allude to a defendant's right to remain silent as indicating a consciousness of guilt, because to do so would impermissibly

penalize the defendant for exercising this right); *People v. Welsh,* 58 P.3d 1065 (Colo. App.2002) (same), *aff'd on other grounds, People v. Welsh, supra; People v. Perry, supra* (a defendant's exercise of his right to be free from a warrantless search and seizure in his home is inherently ambiguous and thus not probative of guilt, and admission of the defendant's refusal to consent to a search may violate due process).

■ The Fourth Amendment to the United States Constitution and article II, § 7 of the Colorado Constitution protect against unreasonable seizures, including arrest. *People v. Najjar,* 984 P.2d 592 (Colo.1999). A person has a legitimate expectation of privacy from unreasonable government intrusions, especially within the person's home. *People v. Holmes,* 981 P.2d 168 (Colo.1999); *People v. Sporleder,* 666 P.2d 135 (Colo.1983).

■ Even when the police have probable cause to believe that a person has committed a crime, they may not enter a private home to effect an arrest without a warrant, absent consent to entry, exigent circumstances, or the need to render emergency aid. *People v. Allison,* 86 P.3d 421 (Colo.2004).

Unlike in *Jenkins v. Anderson, supra,* here the prosecution presented the arrest evidence during its case-in-chief, not as impeachment. We agree with the division in *People v. Welsh, supra,* 58 P.3d at 1069, that "The use of a defendant's pre-arrest silence as substantive evidence of guilt is significantly different from its use to impeach the defendant's credibility on the stand."

Like evidence of pre-arrest silence, admitting evidence of a defendant's refusal to submit to a warrantless arrest as proving consciousness of guilt places the defendant on the horns of a dilemma: either abandon his right to privacy by leaving a constitutionally protected area and surrendering to what may be an unlawful arrest or refuse to surrender and thereby create evidence of self-accusation. *See People v. Welsh, supra,* 58 P.3d at 1069 (recognizing "the inviolability . . . of the right to privacy"); *cf. People v. Rogers,* 68 P.3d 486 (Colo.App.2002)(if both pre-arrest silence and pre-arrest speech can be used

against the person, he has no choice that will prevent self-incrimination).

Here, although the deputies had probable cause to arrest defendant, because they lacked a warrant and neither exigent circumstances nor a need to render emergency aid existed, they could not enter his residence without consent. Neither defendant nor his mother consented to entry. Thus, defendant's initial decision to remain within his residence, despite the threat to obtain a warrant, was protected by the Fourth Amendment.

We are not persuaded by the trial court's observation that defendant was avoiding arrest, which could be evidence of consciousness of guilt. Defendant provided identification to the Brighton police officers and he made no attempt surreptitiously to leave the home after that initial contact.

Accordingly, we conclude that the trial court abused its discretion in allowing testimony of defendant's refusal to come out of the house and submit to arrest, because the court instructed the jury that this evidence related to consciousness of guilt. *See People v. Keener,* 148 Cal.App.3d 73, 195 Cal.Rptr. 733 (1983)(defendant's refusal to leave his apartment and be arrested cannot be used as evidence of consciousness of guilt).

**B.**

■ We next consider whether this error requires that we reverse defendant's conviction, and we conclude that it does.

■ Because the error in question is constitutional and was preserved by proper objection, we apply a constitutional harmless error analysis. *People v. Campbell, supra.* This standard requires reversal unless the appellate court is confident beyond a reasonable doubt that the error did not contribute to the guilty verdict; in contrast, a general harmless error analysis requires reversal only if the error affects the substantial rights of the defendant. *Bernal v. People,* 44 P.3d 184 (Colo.2002). Under constitutional harmless error, the People bear the burden of proof. *Bernal v. People, supra.*

■ The test is not whether a guilty verdict would have been rendered in a trial without the error, but rather, whether the guilty verdict actually rendered in this trial was surely not attributable to the error. *Bernal v. People, supra; People v. Harris,* 43 P.3d 221 (Colo.2002); *Blecha v. People,* 962 P.2d 931 (Colo.1998).

■ "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). *Compare People v. Dunlap,* 975 P.2d 723 (Colo.1999)(reasonable possibility); *People v. Rodgers,* 756 P.2d 980 (Colo. 1988)(same); *and Leonardo v. People,* 728 P.2d 1252 (Colo.1986)(same), *with People v. Harris, supra* (framing test as "reasonable probability"); *People v. Trujillo,* 49 P.3d 316 (Colo.2002)(same); *and Blecha v. People, supra* (same). The "reasonable possibility" formulation, which we apply because it derives from *Chapman,* represents an extremely high standard.

■■ Although an appellate court does not inquire into the overall sufficiency of the evidence, *Griego v. People,* 19 P.3d 1 (Colo. 2001), the wrongly admitted evidence must be examined in the context of other evidence to determine whether its admission was harmless beyond a reasonable doubt. *Blecha v. People, supra.* This inquiry should involve a number of factors, including the importance of the evidence to the prosecution's case, the overall strength of the prosecution's case, the cumulative nature of the evidence, and the presence or absence of corroborating or contradictory evidence. *People v. Trujillo, supra; Blecha v. People, supra.*

Here, the undisputed evidence of the victim's injuries was consistent with her having fallen out of or been pushed from a moving car. Shortly after the incident, she told a relative, a doctor, and a police officer, all of whom testified at trial, that defendant had pushed her from the car. The victim so testified at trial.

In contrast, defendant presented evidence that the victim was intoxicated and argued that because of her impaired judgment she either jumped or fell from the moving car. Defendant further argued that his post-incident conduct, which was also undisputed, in wrapping the victim's arm with his T-shirt to stop the bleeding, immediately taking her back to her relative's home, and then accompanying her and the relative to the hospital, was consistent and suggested innocence.

Although defendant did not testify, he challenged the credibility of the victim's testimony that he had held the passenger door lock down with his right hand as he drove away to prevent her escape. Defendant argued the impossibility of simultaneously holding the lock down, shifting a manual transmission, and steering the car. The victim also testified that defendant bit her face while putting her in the car. However, defendant pointed out that the medical evidence did show that she had been bitten.

Only one witness testified that defendant refused to come out of the house. This testimony was relatively brief and undisputed by defendant.

However, the prosecution referred to testimony about the arrest in both opening statement and closing argument. In opening statement, the prosecutor told the jury, "[P]ay attention to how [defendant] is apprehended. [This] will be another important part of how the pieces fit together in this case." During closing argument, the prosecutor said, "[Defendant] ran, and he hid, behind his mother's doors, and he stayed there until the cops flushed him out. Is that the conduct of a guy that's done nothing wrong?"

This emphasis indicates that the arrest evidence, which in some cases may have limited significance, was particularly important here to the prosecution's case. *Compare People v. Trujillo, supra* (in closing prosecutor argued improperly admitted custodial statement was evidence of guilt), *and People v. Melendez,* 80 P.3d 883 (Colo.App. 2003)(*cert. granted* Dec. 1, 2003)(both parties raised issue in closing argument), *with Blecha v. People, supra* (where prosecution did not refer to the evidence in opening statement, closing argument, or rebuttal, evidence had minimal importance to the prosecution's case).

The trial court instructed the jury on defendant's constitutional right:

I will also advise the jury that the police, before they can enter anybody's home, even for arrest of that person, are required, by law, to obtain an arrest warrant, and that a person is not required to allow a police officer into his or her home.

However, immediately before giving this instruction, the court had overruled defendant's objection to the testimony surrounding his arrest and erroneously instructed the jury that "I am allowing this testimony to come in, as it relates to the defendant's consciousness of guilt, and for no other matter." *See Barnes v. People*, 735 P.2d 869 (Colo. 1987)(where two instructions conflict, and one is an incorrect statement of law, the fact that the other instruction contains a correct statement of law cannot cure the error). In our view, the latter instruction magnified the evidentiary error by specifically telling the jury that it could consider the arrest evidence for an improper purpose.

When viewed in the context of the prosecutor's multiple references to the arrest evidence and the court's erroneous instruction, we cannot disregard this evidence as "unimportant and insignificant." *People v. Harris*, *supra*, 43 P.3d at 231 (quoting *Chapman v. California*, *supra*, 386 U.S. at 22, 87 S.Ct. at 827).

Accordingly, we cannot say beyond a reasonable doubt that this evidence surely did not contribute to the guilty verdict. Thus, the judgment of conviction must be reversed, and a new trial is necessary.

## II.

Defendant next contends that the second degree assault statute is unconstitutionally vague, both on its face and as applied to him, and that it denies him equal protection. We address this issue because it might arise on retrial, but we reject defendant's three contentions in turn.

A person commits second degree assault if, "[w]ith intent to cause bodily injury to another person, he causes serious bodily injury to that person or another." Section 18–3–203(1)(g). "Serious bodily injury" is defined as "bodily injury which, either at the time of the actual injury or at a later time, involves a substantial risk of death, a substantial risk of serious permanent disfigurement, a substantial risk of protracted loss or impairment of the function of any part or organ of the body, or breaks, fractures, or burns of the second or third degree." Section 18–1–901(3)(p), C.R.S.2003.

## A.

■ Defendant argues that the definition of "serious bodily injury" is unconstitutionally vague on its face because it contains undefined terms whose meaning is subjective, including "risk," "substantial," "serious," "disfigurement," "protracted," and "impairment." We are not persuaded.

■ Due process requires that criminal laws be sufficiently specific to give fair warning of the proscribed conduct to persons of ordinary intelligence. *People v. Castro*, 657 P.2d 932 (Colo.1983). However, statutes must also be sufficiently general to be capable of application under varied circumstances. *People v. Gross*, 830 P.2d 933 (Colo. 1992). A criminal statute need not contain precise definitions of every word constituting an element of the offense to provide fair notice. *Hlavac v. Davidson*, 64 P.3d 881 (Colo.App.2002). The essential inquiry is whether a statute is so vague that persons of ordinary intelligence must guess as to its meaning and may differ as to its application. *People v. Gross, supra.*

In *People v. Jackson*, 194 Colo. 93, 570 P.2d 527 (1977), the supreme court concluded that the first degree assault statute was constitutional because the definition of serious bodily injury, cross-referenced in the statute, was not vague. At that time, "serious bodily injury" was defined as "bodily injury which involves a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body." Colo. Sess. Laws 1971, ch. 121, § 40–1–1001(3)(p) at 414 (now codified at § 18–1–901(3)(p)). Thus, the phrase "substantial risk of" applied only to "death." *People v. Sheldon*, 198 Colo. 519, 602 P.2d 869 (1979).

In 1985, § 18–1–901(3)(p) was amended to its current version, which repeats the phrase "a substantial risk of" in both the second and third clauses of the definition. According to defendant, applying "a substantial risk of" to the second and third clauses so lowers the threshold for serious bodily injury that the definition has become constitutionally infirm. We are not persuaded.

Initially, we note the supreme court's conclusion in *Jackson, supra,* 194 Colo. at 95, 570 P.2d at 528, "We believe it obvious to a juror that 'serious bodily injury' has as a threshold requirement a greater degree of intended injury than 'bodily injury.'" To the extent that the *Jackson* court thereby upheld the phrase "a substantial risk of death," no greater subjectivity arises from repeating this phrase in the second and third clauses of the definition.

We are also not persuaded by defendant's assertion that the current language is unconstitutionally vague because, considering the potentially catastrophic consequences of infection, even a minor injury at least theoretically creates the requisite substantial risk of disfigurement, loss, or functional impairment.

 The party challenging a statute on constitutional grounds must prove unconstitutionality beyond a reasonable doubt. *People v. West,* 724 P.2d 623 (Colo.1986). We reject strained and unreasonable interpretations of a statute. *People v. Trusty,* 53 P.3d 668 (Colo.App.2001). We also interpret a statute, if possible, in a manner that avoids a constitutional issue. *People v. Thomas,* 867 P.2d 880 (Colo.1994).

The term "substantial" has a commonly understood meaning: "not seeming or imaginary; not illusive; real, true." *Webster's Third New International Dictionary* 2280 (1986). This term has been applied by "assessing both the likelihood that harm will occur and the magnitude of the harm should it occur." *People v. Hall,* 999 P.2d 207, 217 (Colo.2000)(interpreting § 18–1–501(8), C.R.S.2003).

Defendant cites no Colorado criminal case, and we have found none, expressing doubt over the meaning of "substantial." Thus, the specter of vagueness raised by defendant is not a necessary consequence of the language, but rather would ripen only if both the plain meaning and judicial interpretations of "substantial" were disregarded and the statute was extended unreasonably.

Accordingly, we conclude that the definition is not unconstitutionally vague on its face.

### B.

 Defendant next argues that, even if these terms do not render the statute unconstitutionally vague on its face, its application to him was nevertheless unconstitutional. We disagree.

 A statute is vague as applied if it does not, with sufficient clarity, prohibit the conduct against which it is to be enforced. *City of Colorado Springs v. Blanche,* 761 P.2d 212 (Colo.1988). A defendant may test a law for vagueness as applied only with respect to his particular conduct; if the statute is not vague as applied to the defendant, it will be enforced even though it may be vague as applied to the conduct of others. *City of Colorado Springs v. Blanche, supra.*

Here, the prosecution's medical witness described the victim's injuries as "lacerations that were gaping wounds ... that appeared to extend down through the fat layer underneath the skin, down to the layer on top of the muscle, and ... were obviously contaminated." He explained that these wounds could lead to "infections, and/or subsequent development of complications that could result in possible amputation of the extremities."

Accordingly, we conclude the statute is constitutional as applied to defendant. *Cf. People v. Thompson,* 748 P.2d 793 (Colo.1988)(although injuries were healing well with no permanent disability at the time of trial, court erred in dismissing charge of child abuse involving serious bodily injury because expert testimony established, at the time of the injury, a twenty to thirty percent chance of permanent disability).

### C.

Defendant next argues that, because of the alleged vagueness in the definition of "serious bodily injury," the statute does not offer a rational standard for distinguishing serious bodily injury from "bodily injury." According to defendant, his equal protection rights were violated because he was convicted of second degree assault, which turns on serious bodily injury and is a class four felony, while third degree assault, which turns on bodily injury, is a class one misdemeanor. Again, we disagree.

Equal protection guarantees that similarly situated persons will receive like treatment. *Gallegos v. Phipps,* 779 P.2d 856 (Colo.1989). If, as here, a statute does not involve a suspect classification, there need only be a rational basis to uphold the statute. *People v. Benjamin,* 197 Colo. 188, 591 P.2d 89 (1979). A statute is unconstitutional if, when differentiating terms, the distinction is not sufficiently apparent to be applied intelligently and uniformly. *People v. Benjamin, supra.*

In *People v. Benjamin, supra,* the supreme court concluded that the distinction between the terms "serious bodily injury" and "bodily injury" in a former version of § 18–1–901 was sufficiently apparent to be intelligently and uniformly applied. *See* Colo. Sess. Laws 1971, ch. 121, § 40–1–1001(3)(c), (p) at 413–14. Therefore, the court rejected a similar equal protection argument.

Moreover, the concepts of serious bodily injury and bodily injury could overlap, as defendant asserts, only if serious bodily injury is given an unreasonably broad interpretation, for the reasons we have explained in rejecting defendant's facial unconstitutionality vagueness argument.

Accordingly, we discern no equal protection violation.

### III.

Defendant next contends the evidence was insufficient to establish serious bodily injury. We disagree.

In reviewing a challenge to the sufficiency of the evidence, we consider the evidence in the light most favorable to the People, giving the People the benefit of every reasonable inference that might be drawn from the evidence. *People v. Trujillo,* 184 Colo. 387, 524 P.2d 1379 (1974).

Here, as previously discussed, the prosecution presented uncontroverted evidence that the victim suffered serious bodily injury in the form of gaping wounds and abrasions where her skin had been torn or scraped off.

Accordingly, we discern sufficient evidence to sustain a finding of serious bodily injury.

### IV.

In light of our conclusion that the judgment must be reversed, we need not address defendant's final contention that the trial court erred in overruling his objection to allegedly improper closing argument by the prosecutor.

The judgment is reversed, and the case is remanded for a new trial.

Judge MARQUEZ and Judge TAUBMAN concur.