The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Clarence KING, Defendant–Appellant.

No. 04CA0568.

Colorado Court of Appeals, Div. III.

Aug. 10, 2006.

John W. Suthers, Attorney General, Wendy J. Ritz, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Joan E. Mounteer, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Clarence King, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree assault (deadly weapon), second degree kidnapping, and attempted sexual assault. He also appeals the sentence imposed. We affirm.

In 2003, after consuming several alcoholic beverages and smoking marijuana and crack cocaine, King dragged the victim into an alley, beat her repeatedly in the face, and attempted to sexually assault her. When the police arrived on the scene, they found King, with his pants down to his knees, beating the victim. King was arrested, and the victim was taken to the hospital by ambulance because of the severity of the beating.

Several days later, Detective Denison met with King at the Denver City Jail and asked him whether he wanted to provide a statement. King agreed, and Detective Denison escorted him to the police headquarters. The detective advised King of his *Miranda* rights and told him that signing the advisement form was not an admission of guilt. King indicated his understanding of his rights, signed the advisement form, and agreed to discuss the case.

King was charged with second degree assault, attempted sexual assault, a sexual assault sentence enhancer, and second degree kidnapping. A jury found King guilty as charged. The trial court sentenced him to ten years for second degree assault, ten years for second degree kidnapping, and an

indeterminate sentence of eight years to life for attempted sexual assault, to be served concurrently in the Department of Corrections. In March 2004, King filed this appeal challenging his conviction and sentence.

## I. Suppression of Statements

■ King contends that the trial court violated his state and federal constitutional rights to due process and privilege against self-incrimination when it denied his motion to suppress the statements he made to Detective Denison after his arrest. King contends that Detective Denison used subtly coercive psychological tactics to induce him to sign the *Miranda* advisement form and that, therefore, his waiver of his *Miranda* rights was not knowing, intelligent, or voluntary. We disagree.

■ When determining the admissibility of statements made by a defendant to the police, "courts must always protect the defendant's fundamental privilege against being compelled to testify against himself [or herself] in a criminal case as embodied in the Fifth Amendment." *People v. Trujillo,* 49 P.3d 316, 321 (Colo.2002). Unless a defendant is fully warned of his or her Fifth Amendment rights and knowingly, voluntarily, and intelligently waives those rights, his or her custodial statements are considered to have been illegally obtained and are inadmissible as substantive evidence against the defendant. *People v. Trujillo, supra.*

■ The Fifth Amendment requires that prior to any questioning during a custodial interrogation by law enforcement officers, a person be warned that he or she has the right to remain silent, that any statement he or she makes may be used as evidence against him or her, and that he or she has the right to the presence of an attorney, either retained or appointed. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ A waiver of *Miranda* rights is knowing and intelligent if the defendant possesses an awareness of both the nature of the right and the consequences of the decision to waive it. *People v. Mejia–Mendoza,* 965 P.2d 777 (Colo.1998). A waiver is voluntary if it is the result of a free and deliberate choice rather than intimidation, coercion, or deception. *People v. Mejia–Mendoza, supra.* In essence, the question at issue is whether the defendant's will has been overborne. *People v. Valdez,* 969 P.2d 208 (Colo.1998).

■ It is the prosecution's burden to prove by a preponderance of the evidence that the defendant's waiver was knowing and intelligent, *People v. Kaiser,* 32 P.3d 480 (Colo.2001), as well as voluntary. *People v. Stamus,* 902 P.2d 936 (Colo.App.1995). The trial court must evaluate the waiver based on the totality of the circumstances surrounding the custodial interrogation; simply because the defendant's decision to talk to the police might be ill-advised does not mean that his or her decision was not knowing and intelligent. *People v. Kaiser, supra.* The police are not required to tell the defendant that it may be against his or her self-interest to confess to the police. *People v. Jordan,* 891 P.2d 1010 (Colo.1995).

■ Finally, we do not presume acquiescence in the loss of fundamental constitutional rights, and therefore we indulge every reasonable presumption against waiver. *Christie v. People,* 837 P.2d 1237 (Colo.1992).

■ In reviewing a motion to suppress a custodial statement and a trial court's determination of the validity of a *Miranda* waiver, the appellate court defers to the trial court's findings of fact if they are supported by competent evidence in the record, but reviews the legal effect of those facts de novo. *People v. Bostic,* 148 P.3d 250 (Colo.App. 2006).

King argues that Detective Denison's assurance that his signature on the *Miranda* advisement form did not constitute an admission of guilt was misleading because it insinuated that his statements made after signing the form would not be incriminating. Thus, King argues that the incriminating statements he made after signing the form should have been suppressed because his *Miranda* waiver was not knowing, intelligent, or voluntary. We disagree.

Here, the trial court found that Detective Denison properly advised King of his *Mi-*

*randa* rights and that King indicated he had been advised of his rights but wished to waive them and make a voluntary statement nonetheless. The trial court further found that, although Detective Denison mentioned that King's signature was not an admission of guilt, that assurance referred to King's signature on the advisement form only, and not to subsequent statements. Therefore, the trial court concluded that King's *Miranda* waiver was adequate.

Deferring to the trial court's findings of fact regarding King's *Miranda* waiver and reviewing the legal effect of those facts de novo, we agree with the trial court's conclusion.

The record fully supports the trial court's finding that King waived his *Miranda* rights knowingly, intelligently, and voluntarily. Detective Denison gave King a *Miranda* advisement form describing each right individually and informed him that his signature on the form did not constitute an admission of guilt. King then signed the portion of the form indicating that he understood all his *Miranda* rights and the portion of the form indicating that he wished to make a voluntary statement to Detective Denison.

Furthermore, the record shows that Detective Denison was not in uniform at the time of the interrogation, and he never drew his gun or threatened King. Detective Denison also testified that King did not appear confused or indicate that he had any trouble understanding him. Finally, King concedes on appeal that Detective Denison's assurance was "technically true" because the decision to waive *Miranda* rights is neither per se incriminating nor a per se admission of guilt.

Thus, indulging every reasonable presumption against waiver, and considering the totality of the circumstances surrounding King's interrogation, we agree with the trial court and conclude that he knowingly, intelligently, and voluntarily waived his *Miranda* rights. Accordingly, the trial court was correct in not suppressing the statements he made after that waiver.

## II. Illegal Sentence

■ King contends that his sentence for second degree kidnapping is illegal because it was enhanced based on a finding that the kidnapping constituted a crime of violence, and the facts underlying that finding were neither charged nor submitted to the jury. We conclude the enhanced sentence was proper based on a prior conviction.

■ Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). For *Apprendi* purposes, the statutory maximum is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant, not the maximum sentence a judge may impose after finding additional facts. *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The rule in *Blakely* is applied retroactively to cases on direct appeal at the time the opinion was issued. *Lopez v. People,* 113 P.3d 713 (Colo.2005).

■ A sentencing court's imposition of an aggravated range sentence does not violate *Blakely* if that court relies on one *Blakely*-exempt or *Blakely*-compliant aggravating sentencing factor, that is, a fact found by the jury, a fact admitted by the defendant, a fact found by the judge under the defendant's stipulation to judicial fact finding, or the fact of a prior conviction, even if the court also considers factors that are not *Blakely*-exempt or *Blakely*-compliant. *Lopez v. People, supra.*

■ As long as the prior conviction arose from procedures that satisfy the fair notice, reasonable doubt, and jury trial guarantees of the Sixth and Fourteenth Amendments, the trial court may consider the prior conviction a *Blakely*-exempt factor, even if the prior conviction was a misdemeanor. *People v. Huber,* 139 P.3d 628 (Colo.2006).

■ Here, King filed his appeal on March 19, 2004. The Supreme Court decided *Blakely* on June 24, 2004. Therefore, the ruling in *Blakely* applies retroactively to this appeal. *See Lopez v. People, supra (Blakely*

applies to cases pending on direct appeal when *Blakely* was announced).

In determining King's sentence, the trial court relied on, among other things, an earlier misdemeanor conviction for aggravated robbery in Texas. Thus, because the fact of a prior conviction is a *Blakely*-exempt factor under *Lopez,* the trial court properly imposed an aggravated range sentence for the second degree kidnapping charge.

We do not address whether King's misdemeanor conviction complied with the fair notice, reasonable doubt, and jury trial guarantees of the Sixth and Fourteenth Amendments because he does not raise these issues on appeal.

### III. Indeterminate Sentencing

King contends that the trial court erred in sentencing him to an indeterminate term of eight years to life under the Sex Offender Lifetime Supervision Act (Act), § 18–1.3–1001, et seq., C.R.S.2005, because the indeterminate sentencing provisions of the Act do not apply to inchoate sexual offenses, such as attempted sexual assaults. In the alternative, King argues that the indeterminate sentencing provisions of the Act do not apply to him because the aggravator found in § 18–3–402(4), C.R.S.2005, does not apply to his inchoate sexual offense and, therefore, his conviction constituted a class five felony, which is not subject to the Act. Finally, King contends that his sentence is illegal because it violates his state and federal constitutional rights to due process. We disagree with all three contentions.

### A.

■ First, King argues that the Act does not apply to attempted sexual assault because § 18–3–402(6), C.R.S.2005, subjects only persons convicted of a completed sexual assault to the indeterminate sentencing provisions of the Act. Notwithstanding King's analysis of this subsection, we conclude that the Act applies to him for other reasons.

■ Interpretation of a statute is a question of law that courts review de novo. *Spahmer v. Gullette,* 113 P.3d 158 (Colo. 2005). In construing a statute, we give effect to the intent of the legislature and adopt the statutory construction that best effectuates the purposes of the legislative scheme, looking first to the plain language of the statute. *Spahmer v. Gullette, supra.* Courts read and consider the statutory scheme as a whole to give a consistent, harmonious, and sensible effect to all its parts. *People v. Starcher,* 107 P.3d 1127 (Colo.App.2004).

Section 18–3–402(6) provides that any person convicted of felony sexual assault committed on or after November 1, 1998 shall be sentenced in accordance with the provisions of the Act. *See People v. Becker,* 55 P.3d 246 (Colo.App.2002). That statute does not refer to attempted sexual assaults.

Ordinarily, sexual assault is a class four felony. Section 18–3–402(2), C.R.S.2005. However, § 18–3–402(4)(a), C.R.S.2005, states that sexual assault is a class three felony if "[t]he actor causes submission of the victim through the actual application of physical force or physical violence."

Criminal attempt to commit a class three felony is a class four felony. Section 18–2–101(4), C.R.S.2005. A person commits criminal attempt if, acting with the culpability otherwise required for commission of an offense, he or she engages in conduct constituting a substantial step toward the commission of the offense. Section 18–2–101(1), C.R.S. 2005.

Under the Act, criminal attempt to commit a sexual assault is considered a sex offense if that attempt constitutes a class two, three, or four felony. Section 18–1.3–1003(5)(b), C.R.S.2005. A person convicted of a sex offense is considered a sex offender. Section 18–1.3–1003(4), C.R.S.2005. With exceptions not relevant here, a sex offender must be sentenced to an indeterminate term of at least the minimum of the presumptive range for the offense committed and a maximum of the sex offender's natural life. Section 18–1.3–1004(1)(a), C.R.S.2005. Thus, a person who is charged with criminal attempt to commit a sexual assault is subject to indeterminate sentencing under the Act if the attempted assault constitutes a class two, three, or four felony. *People v. Madden,* 87 P.3d 153

(Colo.App.2003), *rev'd on other grounds,* 111 P.3d 452 (Colo.2005).

Here, the jury found King guilty of attempted sexual assault and made special findings that he engaged in conduct constituting a substantial step toward the commission of sexual assault and caused submission of the victim through the actual application of physical force or physical violence. Therefore, these jury findings resulted in King's conviction of a class four felony. Accordingly, under § 18–1.3–1003(5)(b), King is considered a sex offender subject to indeterminate sentencing under the Act.

### B.

Nevertheless, King next contends that he is not subject to the indeterminate sentencing provisions of the Act because he was convicted of attempted sexual assault and, under the plain language of § 18–3–402(4), the aggravator only applies to completed sexual assaults. Thus, King argues that his conviction of attempted sexual assault was for a class five felony, which is not subject to the Act under § 18–1.3–1003(5)(b). We disagree.

Section 18–3–402(4) provides that sexual assault is a class three felony if it is attended by any of several aggravating circumstances. Section 18–3–402(4)(a), in turn, states that one of the aggravating circumstances is the actor's causing the submission of the victim through the actual application of physical force or physical violence. Therefore, the statute unambiguously states that a sexual assault attended by the submission of the victim through the actual application of physical force or physical violence constitutes a class three felony.

As mentioned above, § 18–2–101(4) provides that criminal attempt to commit a class three felony is a class four felony.

Thus, based on the plain language of the statutes, and considering the statutory scheme as a whole to give a consistent, harmonious, and sensible effect to all its parts, we agree with the trial court's conclusion that the General Assembly intended that persons guilty of attempted sexual assault through the actual application of physical force or physical violence be convicted of a class four felony. Therefore, the aggravator found in § 18–3–402(4)(a) applies to attempted sexual assaults in addition to completed sexual assaults.

King was thus properly convicted of a class four felony, which subjected him to the indeterminate sentencing provisions of the Act. Accordingly, the trial court correctly sentenced King to an indeterminate sentence of eight years to life for his attempted sexual assault of the victim through the actual application of physical force or physical violence.

### C.

Last, King argues that the trial court violated his state and federal constitutional rights to due process when it sentenced him to an indeterminate term of eight years to life under the Act based on an aggravator that only applies to completed sexual assaults. We disagree.

The Due Process Clauses of the United States and Colorado Constitutions prohibit criminal conviction except on proof of guilt beyond a reasonable doubt on each of the essential elements of a crime. U.S. Const. amend. XIV; Colo. Const. art. II, § 25; *People v. Mersman,* 148 P.3d 199 (Colo.App. 2006).

Here, for the reasons stated above, the aggravator in § 18–3–402(4)(a) applies to attempted sexual assault, and King was properly convicted of a class four felony. Accordingly, the trial court did not violate King's state and federal constitutional rights to due process when it sentenced him to eight years to life under the Act.

The judgment and sentence are affirmed.

Judge FURMAN and Judge CRISWELL * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and