IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of

ANNA BEREZOW,

                Appellant,

   and

ALEXANDER BEREZOW,

                Respondent.

No. 86490-4-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — Anna Berezow, representing herself, challenges the parenting plan and related orders entered in connection with the dissolution of her marriage to Alexander Berezow. Anna[1] primarily argues that the trial court erred by awarding sole custody of their daughter to Alexander without requiring him to undergo a psychosexual evaluation. We affirm the trial court's orders but deny Alexander's request for attorney fees on appeal.[2]

FACTS

Alexander and Anna married in Seattle in 2008. Y.B., their only child, was born in Kirkland in 2019. Alexander suffers from obsessive compulsive disorder (OCD), an anxiety disorder which causes him to have a variety of intrusive thoughts about harming

---

[1] We refer to the parties by their first names for clarity because they share the same surname.

[2] Anna moved to stay enforcement of the judgment pending appeal. A commissioner of this court denied the motion, and Anna's motion to modify was referred to this panel. We deny Anna's motion to modify.

his loved ones and to worry about those thoughts.

In early 2020, Alexander, Anna and Y.B. traveled to Poland and stayed with Anna's relatives. On August 12, 2020, the day the family was scheduled to fly home, Anna informed Alexander that she and Y.B. would remain in Poland. Shortly thereafter, Anna filed for divorce in Poland and Alexander filed for divorce in Washington. The superior court in King County granted a dissolution decree in August 2021 and bifurcated issues relating to the parenting plan, division of asserts/debts, and attorney fees.

Alexander filed an action in Poland to compel Anna to return Y.B. to the United States pursuant to the Hague Convention. Anna opposed return, claiming that Alexander "has pedophile thoughts" and "is a threat to [Y.B.]." Alexander explained that his OCD causes "intrusive thoughts" and "constant worry" that he "might hurt someone," but "those are unreal thoughts" and "there is no action." He acknowledged telling Anna that he had "sexual thoughts related to the baby," in addition to worrying that "the baby would choke while eating, that I might drop her or that maybe we are overfeeding her." In October 2021, the Court of Appeals in Poland ordered Y.B. returned. Anna did not comply.

On February 8, 2022, the King County Superior Court entered a temporary parenting plan and related orders designating Alexander as the primary residential parent with authority to make major decisions, granting Anna supervised visitation, and requiring Anna to return Y.B. to Washington. The court also awarded attorney fees to Alexander based on Anna's intransigence. Anna did not comply.

On September 5, 2023, the court denied Anna's motion to modify the temporary

orders, found Anna intransigent related to her failure to return Y.B., and ordered that Anna would be held in contempt if she did not return Y.B. within two weeks. The contempt order included a finding that Anna "has an active felony warrant out of King County, and there has been a Yellow Interpol notice issued due to [Anna's] failure to comply with court orders." Anna did not comply.

A seven day bench trial took place during October, November, and December 2023, with Anna appearing remotely and representing herself. A major issue throughout trial was whether Alexander should be required to undergo a psychosexual evaluation to determine whether he poses a threat to Y.B. The trial court heard testimony from Anna, Alexander, and other witnesses about Alexander's behaviors and mental health.

Anna questioned Alexander extensively regarding her claim that Alexander admitted being "sexually aroused" and "getting wet down there" when bottle-feeding Y.B. Anna noted that Alexander told the court in Poland that he had experienced "sexual thoughts" about Y.B. She presented the testimony of Dr. Mark Whitehill, a licensed psychologist and sex offender treatment provider who opined that it would be reasonable for Alexander to undergo a psychosexual evaluation given his sexual thoughts about Y.B.

Alexander strongly denied being sexually aroused by Y.B. or any other children and asserted that he would never want to hurt his daughter. Alexander explained that OCD is a fear disease that causes him to have a variety of disturbing intrusive thoughts and to "distrust [his] own reality" even though he has a "perfectly clean track record of never doing anything to anyone, ever." Alexander also stated that his intrusive thoughts pass in "a few seconds" and that an independent observer does not notice anything

3

because "nothing happens." He described the nature of his intrusive thoughts about Y.B. as "what if I accidentally hit her head, what if I was sexually aroused by her. Of course, none of this is real. They're just worries. They're thoughts and worries about those thoughts." In response to questions about the bottle-feeding incident, Alexander testified that he experienced intrusive thoughts and worries about the possibility that he might have experienced some kind of physiological response, but they were "just worries." Alexander said Anna knew about his OCD before they got married and that she used to be supportive, "and then all of a sudden, you changed, and now what you knew was OCD is now something else, and it's not true."

Dr. Whitehill recommended that Alexander undergo a psychosexual evaluation based on Anna's assertions, assuming they are true, that Alexander admitted experiencing sexual thoughts about Y.B. and exhibited disturbing behaviors, not merely thoughts. Dr. Whitehill also believed Anna might support the renewal of contact between Alexander and Y.B. if the evaluation "came back with low risk, which is really the best that such evaluations can do." However, Dr. Whitehill testified that fear of harming someone is not uncommon in a particular kind of OCD known as "harm OCD." He acknowledged that to the extent there is a "long-standing documentation" that Alexander never acted on his intrusive thoughts, "it sounds like what we're dealing with is a case of OCD" and "we would rule out pedophilia or any sexual deviance." Dr. Whitehill also stated that it would be "exceedingly rare" for someone Alexander's age who had never acted out to suddenly develop pedophilia and that the ability to speak freely about intrusive thoughts is a "positive prognostics sign" for OCD.

On January 26, 2024, the trial court entered detailed findings of fact and

4

conclusions of law, a final divorce order, final parenting plan, final child support order and worksheets, and a contempt order. The court found that it would be in the best interest of the child to reside with Alexander and imposed restrictions on Anna under RCW 26.09.191 due to abusive use of conflict and withholding Y.B. without good cause. The court also refused to order Alexander to undergo a psychosexual evaluation, finding "there is no credible evidence that he suffers from anything other than OCD."

The court found that Alexander has a subset of OCD known as harm OCD, an anxiety disorder which causes the person to have intrusive thoughts and fears that they may engage in harmful behavior. The court found Alexander credible when he testified about his mental health and what happens when he has intrusive thoughts and fears, that there is no credible evidence Alexander ever acted on any of his thoughts, and that Anna's claims to the contrary were not credible. The court found that Alexander had intrusive thoughts about harming Y.B. and on two occasions became fearful or concerned about becoming sexually aroused by her, but his thoughts and fears arose from harm OCD, and there is no credible evidence to suggest he would act on them or has pedophilia.

Regarding Dr. Whitehill's testimony, the court found him a credible witness and that it relied on Dr. Whitehill's testimony to the extent he confirmed that Alexander's thoughts could be related to harm OCD; that Alexander's practice of telling Anna and his therapist about his thoughts and fears was more consistent with OCD; and that it would be rare for a person to develop pedophilia later in life. But the court found Dr. Whitehill's recommendation that Alexander undergo a sexual deviancy evaluation was based on his "flawed assumptions" that Alexander engaged in the conduct Anna alleged

and that the evaluation might encourage Anna to bring Y.B. back to the United States. To the contrary, the court found that even if the evaluation came back low risk, Anna would still claim Alexander was unsafe. The court also found that "the outcome and impact of these proceedings would have been far different" if Anna returned to the United States in 2021 and that "it would be unjust to allow her refusal to follow court orders and her unilateral decision not to allow the father contact with his daughter to determine the outcome of these proceedings."

The court imposed a 65/35 split of the community assets, with the greater portion awarded to Alexander due to the fact that he "will be incurring legal and other significant expenses in enforcing this order in Poland and locating his daughter," as well as expenses for therapy and a Polish-speaking nanny. The court also awarded attorney fees in the amount of $190,000 to Alexander based on "intransigence" which "permeated the entirety" of the legal proceedings. The court subsequently denied Anna's motion for reconsideration.

Anna appeals.

## DISCUSSION

### Scope of Appeal

As a preliminary matter, we must address the scope of the appeal before us, which "is determined by the notice of appeal, the assignments of error, and the substantive argumentation of the parties." Clark County v. W. Wash. Growth Mgmt. Hr'gs Bd., 177 Wn.2d 136, 144, 298 P.3d 704 (2013). While we acknowledge the difficulties of self-representation, "'the law does not distinguish between one who elects to conduct [their] own legal affairs and one who seeks assistance of counsel—both are

6

subject to the same procedural and substantive laws.'" In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993) (quoting In re Marriage of Wherley, 34 Wn. App. 344, 349, 661 P.2d 155 (1983)). This includes RAP 10.3(a)(4) (briefing must include a "separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error."), RAP 10.3(a)(6) (requiring appellant to provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record."), and RAP 10.3(g) (this court "will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto.").

"Strict adherence to [RAP 10.3] is not merely a technical nicety." In re Est. of Lint, 135 Wn.2d 518, 532, 957 P.2d 755 (1998). "The purpose of [RAP 10.3] is to enable the court and opposing counsel efficiently and expeditiously to review the accuracy of the factual statements made in the briefs and efficiently and expeditiously to review the relevant legal authority." Litho Color, Inc. v. Pac. Emps. Ins. Co., 98 Wn. App. 286, 305-06, 991 P.2d 638 (1999).

Anna's notice of appeal challenges the parenting plan and numerous related orders. But her opening brief does not designate assignments of error or identify issues presented for review, as the rules of appellate procedure require. We need not review unassigned errors. Unigard Ins. Co. v. Mut. of Enumclaw Ins. Co., 160 Wn. App. 912, 922, 250 P.3d 121 (2011). Anna attempted to ameliorate some of these deficiencies in her reply brief, but issues raised and argued for the first time in a reply brief are too late to warrant consideration. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Nevertheless, we may waive technical violations of the rules

if the issues are reasonably clear from the arguments in the brief, the opposing party has not been prejudiced, and the court has not been greatly inconvenienced. In re Dependency of H.W., __ Wn. App. 2d __, 572 P.3d 481, 487 (2025); RAP 1.2(a).

Applying these principles, we perceive one overarching issue permeating Anna's briefing: whether the trial court erred in finding that Alexander suffered from harm OCD and granting him full custody of Y.B. without requiring him to undergo a psychosexual evaluation to prove that he is not a pedophile. The nature of this challenge is sufficiently clear for us to overlook her noncompliance with RAP 10.3 and consider her arguments as to this issue. In doing so, we observe that Anna chose not to provide this court with the full record for review. See RAP 9.2(b) ("A party should arrange for the transcription of all those portions of the verbatim report of proceedings necessary to present the issues raised on review."); Rhinevault v. Rhinevault, 91 Wn. App. 688, 692, 959 P.2d 687 (1998) (it is the appellant's burden to perfect the record so the reviewing court has all of the relevant evidence before it.). Nevertheless, we have determined that the record before us is sufficient to permit meaningful review of this issue. In doing so, we will "decline to consider facts recited in the briefs but not supported by the record." Sherry v. Fin. Indem. Co., 160 Wn.2d 611, 615 n. 1, 160 P.3d 31 (2007). Nor will we consider issues Anna raised for the first time in her reply brief. Cowiche Canyon, 118 Wn.2d at 809 (issues raised and argued for the first time in a reply brief are too late to warrant consideration); RAP 10.3(c) (a reply brief must be "limited to a response to the issues in the brief to which the reply brief is directed.").

Anna expressed dissatisfaction with several other aspects of the proceedings below, such as the trial court's jurisdictional rulings, the allocation of assets, the award

8

of attorney fees, and her arrest warrant. But these claims consist of conclusory arguments unsupported by citations to legal authority or reasoned analysis. As such, they are insufficiently raised to permit review. See Cowiche Canyon, 118 Wn.2d at 809 (arguments that are not supported by reference to the record, meaningful analysis, or citation to authority need not be considered); Holland v. City of Tacoma, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) (passing treatment of an issue or lack of reasoned argument insufficient for judicial review); West v. Thurston County, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012) ("We do not consider conclusory arguments that do not cite authority").

Psychosexual Evaluation

"A trial court wields broad discretion when fashioning a permanent parenting plan." In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). A parenting plan must be determined to be in the best interest of a child after considering the statutory factors set forth at RCW 26.09.187(3)(a). In re Marriage of Kovacs, 121 Wn.2d 795, 801, 854 P.2d 629 (1993). The parenting plan may limit any conduct by the parents that the court "expressly finds adverse to the best interests of the child." RCW 26.09.191(4)(c)(vii).

We review a trial court's ruling on provisions of a parenting plan for abuse of discretion. In re Marriage of Black, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). A trial court abuses its discretion when its "decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). We review a trial court's findings of fact for substantial evidence, which is evidence sufficient to persuade a fair-minded person of the truth of

the matter asserted. Katare, 175 Wn.2d at 35. We defer to the trial court's determinations regarding the persuasiveness of the evidence, witness credibility, and conflicting testimony. In re Vulnerable Adult Pet. for Knight, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014).

Anna argues that the trial court failed to consider the best interest of the child when it assumed without evidence that Alexander was safe to have full custody of Y.B. She insists that Alexander admitted being sexually attracted to his infant daughter and sexually abusing her on two occasions. She contends that the court lacked sufficient evidence to find that Alexander's intrusive thoughts and fears about Y.B. arose from harm OCD rather than pedophilia. She further argues that Alexander provided no proof that he was ever formally diagnosed with OCD and suggested that he may be hiding his pedophilic tendencies by diagnosing himself as having OCD. She therefore contends that denying a psychosexual evaluation to determine whether Alexander has pedophilic tendencies toward his child places Y.B. in imminent danger of sexual abuse in her father's custody. The record does not support Anna's claims.

Alexander testified that he was diagnosed with OCD in 2006 and that he had experienced symptoms for "as long as I can remember." Anna acknowledged that Alexander suffers from OCD, that he communicated his intrusive thoughts and fears to her during the relationship, and that he never acted on any of the thoughts and fears he expressed about hurting her prior to Y.B. being born. In addition, Alexander's therapist stated in a declaration that he has been treating Alexander since 2007 for "intrusive thoughts and fantasies would make him dread that he was causing or would cause harm to others unwittingly and unintentionally" and that he did not think Alexander would

ever act on them. After questioning Alexander about his thoughts, fears, and behaviors, the court found Alexander's explanations credible and Anna's claims to the contrary not credible. It is well settled that credibility determinations are for the trial court and are not subject to review. In re Marriage of Rideout, 150 Wn.2d 337, 350-52, 77 P.3d 1174 (2003). And Dr. Whitehill's testimony was consistent with the court's unopposed finding that harm OCD explains Alexander's intrusive thoughts and fears about Y.B. Such unchallenged findings are considered verities on appeal. In re Est. of Haviland, 162 Wn. App. 548, 563, 255 P.3d 854 (2011).

We conclude that the court did not abuse its discretion in concluding that "there is no credible evidence that [Alexander] suffers from anything other than OCD" and refusing to order him to undergo a psychosexual evaluation.

## Attorney Fees

Alexander seeks an award of attorney fees under RAP 18.1. We may award attorney fees on appeal "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." RAP 18.1(a). RAP 18.1(b) requires a party to "devote a section of its opening brief to the request for the fees or expenses." "Argument and citation to authority are required under the rule to advise us of the appropriate grounds for an award of attorney fees as costs." Wilson Ct. Ltd. P'ship v. Tony Maroni's, Inc., 134 Wn.2d 692, 710 n.4, 952 P.2d 590 (1998)). Requests that fail to comply with these requirements are properly denied. Thompson v. Lennox, 151 Wn. App. 479, 485, 151 P.3d 597 (2009).

Here, Alexander requested attorney fees "as the prevailing party" and based on Anna's "continued intransigence." But he provides no argument or citation to authority in

11

support of his request. Compliance with RAP 18.1(b) is mandatory and requires "more than a bald request for attorney fees on appeal." Osborne v. Seymour, 164 Wn. App. 820, 866, 265 P.3d 917 (2011). We deny Alexander's request for attorney fees based on his failure to comply with RAP 18.1.

CONCLUSION

We affirm.

_Coburn, J._

WE CONCUR:

_Feldman, J._      _Mann, J._